BUCHMAN PLUMBING COMPANY, INC. v.
THE REGENTS OF THE UNIVERSITY OF
MINNESOTA AND ANOTHER.
UNITED PACIFIC INSURANCE COMPANY,
THIRD-PARTY DEFENDANT.

215 N. W. 2d 479.

February 15, 1974—No. 43976.

*Sheldon J. Eviden* and *Stephen M. Goldfarb,* for appellant.

*Carlsen, Greiner & Law, Ronald D. Olson,* and *Timothy M. O'Brien,* for respondent regents.

*Briggs & Morgan* and *John L. Devney,* for respondents James Steele Construction Company and its surety.

Heard before Knutson, C. J., and Otis, Peterson, and Mulally, JJ., and considered and decided by the court.

EDWARD D. MULALLY, JUSTICE.*

This matter arose out of a construction project at the University of Minnesota. It involved the addition of two floors and a penthouse to the V. F. W. Cancer Research Center.

The Regents of the University of Minnesota (University) let four contracts with prime contractors for the purpose of general construction and for elevator, mechanical, and electrical installations. Buchman Plumbing Company, Inc. (Buchman), the plaintiff, was awarded the mechanical contract. Plans and specifications were contained in a booklet that consisted of bidding requirements, general conditions, and special requirements for each of the prime contractors. The project was to commence April 23, 1968, and was to be completed within 200 consecutive days.

The University contracted with James Steele Construction Company (Steele) as the general contractor for the project. Steele's contract was substantially identical with the contract between the University and Buchman.

After receipt of notice to proceed, Buchman moved a construction trailer onto the site but did not perform any work on the project until mid-July 1968. Buchman admitted there was some work it could have completed before July but decided that to do so would be uneconomical.

On July 1, 1968, a progress meeting of all contractors was held, and the topic of project delay was discussed. Mr. Walter Buchman, president of Buchman, asserted that at this meeting and in August, September, October, November, and December of 1968, he orally protested to Steele and to University officials about the project's delay. John Reuer, an officer of a Buchman subcontractor, claimed he also made numerous protests. Buchman claims that Steele was responsible for the delay. There were no written protests of delay filed with either Steele or the University.

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

Final inspection of all the work was made on March 25, 1969. Buchman then instituted this breach-of-contract action on the theory that it had been damaged by reason of its inability to complete its part of the work on the project within the 200-day period required by the contract because of delay caused by defendant Steele and acquiesced in by defendant University.

The University asserted a cross-claim against Steele for indemnity and impleaded Steele's surety, United Pacific Insurance Company (Pacific). Steele then cross-claimed against the University for indemnity. On November 18, 1970, the University, Pacific, and Steele moved for summary judgment, arguing that Buchman did not have valid cause of action. The motion was denied.

On July 20, 1971, trial was commenced. At the close of Buchman's opening statement, the University and Steele moved for dismissal on the grounds that Buchman had as a matter of law failed to state a valid cause of action. On August 30, the trial court granted Steele's motion for dismissal, denied the University's motion, and provided that any third-party liability would await the results at trial. Buchman appealed from the Steele dismissal, and this court dismissed that appeal as premature. Buchman Plumbing Co. Inc. v. The Regents of University of Minnesota, 293 Minn. 437, 196 N. W. 2d 629 (1972).

Trial was resumed on July 10, 1972. It was agreed that the case should be divided into three parts: Liability, if any, of the University to Buchman; damages, if any, sustained by Buchman; and liability, if any, of Steele and Pacific to the University. Following the presentation of Buchman's evidence on the issue of liability of the University to Buchman, the University and Steele moved to dismiss. The trial court granted this motion and judgment was entered from which Buchman appeals.

■ The first issue to be considered is whether as a matter of

law Buchman has failed to state a cause of action against Steele upon which relief may be granted.[1]

Buchman asserts that even though it and Steele signed separate contracts with the University, it was a creditor beneficiary of the Steele-University contract. For Buchman to maintain an action against Steele on a creditor-beneficiary claim, Buchman must establish a duty owed to it by the University, which duty was to be performed by Steele. Restatement, Contracts, § 133. Buchman claims that the University owed it the duty to create conditions which would allow it to complete its work within 200 days. Buchman finds this duty in Article VIII of the Buchman-University contract, which reads as follows:

"The Owner [University] agrees to provide all labor and material essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the Contractor [Buchman], agrees that it will reimburse the Contractor for such loss; and the Contractor agrees that if he shall delay the progress of the work so as to cause loss for which the Owner shall become liable, then he shall reimburse the Owner for such loss."

Furthermore, Buchman claims that it was necessary for all contractors to cooperate to attain the end result of a completed addition and that it relied on the time-of-the-essence (200 days) clause to calculate its costs.

Steele contends there is no "intent to benefit" Buchman; that Steele's alleged promised performance would not be sufficient to discharge the University's duty to Buchman; that Buchman

---

[1] Although the motion was one to dismiss for failure to state a claim upon which relief can be granted, in granting the motion the lower court said it had done so, *"having heard and considered the arguments and briefs of counsel, and upon all of the files, records and proceedings herein."* (Italics supplied.) In reality, the trial court converted a motion to dismiss into one for summary judgment in all but name, and our review will be made on a summary-judgment standard.

is at most an "incidental beneficiary"; and that even if Buchman is a creditor beneficiary, it has failed to show breach of the University's duty.

Buchman also argues it is a subcontractor of Steele. The record indicates the University signed separate contracts with each of the contractors.

"* * * [A] subcontractor has been defined as one to whom the principal contractor sublets a portion or all of the contract itself, or as one who performs or contracts to perform part of the principal contractor's contract." 17 Am. Jur. 2d, Contractors' Bonds, § 79, p. 254.

Buchman is a contractor, not a subcontractor of Steele.

It is the prevailing rule in Minnesota and other jurisdictions in the United States that a third party may sue on a contract made for his direct benefit. Hedberg & Sons Co. v. Galvin, 274 Minn. 422, 144 N. W. 2d 263 (1966); Northern Nat. Bank v. Northern Minn. Nat. Bank, 244 Minn. 202, 70 N. W. 2d 118 (1955); La Mourea v. Rhude, 209 Minn. 53, 295 N. W. 304 (1940); 17A C. J. S., Contracts, § 519(3). In La Mourea v. Rhude, *supra*, this court adopted the definition of third-party beneficiaries found in Restatement, Contracts, § 133.[2]

---

[2] Restatement, Contracts, § 133, provides in part: "(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

(a)  a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

(b)  a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary, or a right of the beneficiary against the promisee which has been barred by the Statute of

This court has used two tests to determine the enforceability of contracts by third-party beneficiaries. The primary test used in Minnesota in determining whether a party may sue as a third-party beneficiary is the "intent to benefit" test. Gjovik v. Bemidji Local Bus Line, 223 Minn. 522, 27 N. W. 2d 273 (1947); 17A C. J. S., Contracts, § 519 (4) (c) ; 17 Am. Jur. 2d, Contracts, § 304; 2 Williston, Contracts (3 ed.) § 356A; 4 Corbin, Contracts, § 776; Simpson, Contracts (2 ed.) § 117; 4 Dunnell, Dig. (3 ed.) § 1896. This court in Hedberg & Sons Co. v. Galvin, 274 Minn. 422, 425, 144 N. W. 2d 263, 265 (1966), said:

"* * * Although we have constantly been willing to give full force and effect to the rights of third-party beneficiaries, we have always required *as a prerequisite some expression of intent* on the part of the contracting parties that the person asserting such rights is to be a beneficiary of that contract." (Italics supplied.)

This intent must be found in the contract as read in light of all the surrounding circumstances. Restatement, Contracts, § 133 (1a,b); Hedberg & Sons Co. v. Galvin, *supra*. If the intent to benefit is shown, the beneficiary is an intended beneficiary. If

---

Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds;

(c)   an incidental beneficiary if neither the facts stated in Clause (a) nor those stated in Clause (b) exist.

"(2)   Such a promise as is described in Subsection (1a) is a gift promise. Such a promise as is described in Subsection (1b) is a promise to discharge the promisee's duty."

Restatement, Contracts 2d, Tentative Drafts Nos. 1-7, § 133, would substitute the term "intended" beneficiary for both "creditor" and "donee" beneficiaries. The decision to use it was made because the "terms 'donee' beneficiary and 'creditor' beneficiary carry overtones of obsolete doctrinal difficulties." At least one of the purposes would appear to be to eliminate the distinctions that exist as to vesting of rights between creditor and donee beneficiaries. At present, however, the donee- and creditor-beneficiary terminology has judicial acceptance in most states, including Minnesota, and is therefore continued in use.

no intent to benefit is shown, a beneficiary is no more than an incidental beneficiary and cannot enforce the contract.

In determining whether the necessary intent to benefit is present, many courts have inquired: To whom is performance to be rendered? Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 178 N. E. 498 (1931) ; Fidelity & Deposit Co. v. Rainer, 220 Ala. 262, 125 So. 55 (1929); Grismore, Contracts (Rev. ed.) § 238; Simpson, Contracts (2 ed.) § 117; Note, 57 Col. L. Rev. 406. If, by the terms of the contract, performance is directly rendered to a third party, he is intended by the promisee to be benefited. Otherwise, if the performance is directly rendered to the promisee, the third party who also may be benefited is an incidental beneficiary with no right of action. Simpson, Contracts (2 ed.) § 117.[3]

Minnesota also appears to require that the promisor's performance discharge a duty owed by the promisee to the third party. In Northern Nat. Bank v. Northern Minn. Nat. Bank, 244 Minn. 202, 209, 70 N. W. 2d 118, 123 (1955), this court stated:

"* * * A creditor beneficiary is defined as one to whom the promisee owes or is believed to owe a duty *which is discharged by the promisor's performance.*" (Italics supplied.)

In Crow & Crow, Inc. v. St. Paul-Mercury Ind. Co. 247 Minn. 426, 428, 77 N. W. 2d 429, 431 (1956), this court said:

"A third-party beneficiary is one to whom the promisee owes or is believed to owe a duty *which is discharged by the promisor's performance,* and the contractual right the third-party beneficiary acquires is to enforce a promise made for his benefit which he otherwise would not be able to enforce." (Italics supplied.)

See, 2 Williston, Contracts (3 ed.) §§ 356A, 361; Corbin, Contracts (1 Vol. ed.) §§ 774, 787.

In Reed v. Adams Steel & Wire Works, 57 Ind. App. 259, 106 N. E. 882 (1914), factually similar to the present case, the coun-

---

[3] Restatement, Contracts, § 133, *Comment d,* suggests that this distinction is not always determinative.

ty commissioners, in order to have the county jail reconstructed, entered into a contract with defendant under which defendant was to furnish material and labor and construct the steel jail cells, and also entered into a contract with plaintiff under which plaintiff was to construct the jail building. Both contracts contained the following provision:

"All the materials and labor to be furnished by the second party, and not governed by the foregoing schedule, shall be furnished at such time as may be for the best interest of all contractors concerned, to the end that the combined work of all may be all fully completed on contract time." 57 Ind. App. 262, 106 N. E. 883.

Plaintiff entered upon performance until defendant's slowness in supplying steel beams caused a 6-month delay and great damages. Plaintiff sued defendant on a third-party-beneficiary contract theory. Defendant's demurrer to the complaint was sustained. The court held that (1) the contract provision was intended for the benefit of the county in securing a prompt completion of the entire work and not for the purpose of affording a remedy to another contractor who might be damaged by delay; (2) the performance of a contract that is beneficial to a third party does not of itself confer upon the third party a right of action based on such contract.

Applying the above tests, we hold that there was no "intent to benefit" Buchman. Steele's performance was to be rendered directly to the University. The 200-day and Article VIII clauses were intended to benefit the University. Buchman was at most an incidental beneficiary. In addition, Steele's performance of its contract with the University would not discharge the duty owed by the University to Buchman under Article VIII.

■ Upon completion of Buchman's case against the University, the University moved to dismiss. The lower court in granting the motion termed it the equivalent of one for a directed verdict, and this review will be on that basis.

The basis of Buchman's complaint against the University was that work on the project was delayed for 5 months by the failure of Steele to abide by the terms of its contract with the University; that progress of Buchman's work was dependent upon the progress of Steele's work; and that the University made no effort to enforce the provisions of its contract with Steele to permit such work to be finished on time, thereby breaching its contract with Buchman. Buchman asserts that Article VII of the agreement between it and the University required written notice of delay in order to obtain extension of time to complete the project, but that Article VII did not require any written notice of delay in order to claim damages. Buchman concedes that the "general conditions" in the plans and specifications require a claim for damages to be in writing, but contends that provision is not part of the contract. Buchman argues the contract consists of a 3-page agreement it signed and that the parol evidence rule would exclude any prior documents not incorporated by reference. Furthermore Buchman claims that if the contract contains a written notice-of-damages provision, failure to give written notice could not prejudice the University and would be a meaningless formality since the University had actual knowledge that the project would not be completed on time. Buchman further claims that lack of written notice should not affect liability but only mitigate damages to the extent that the University was damaged by the failure to give such notice.

The University asserts that the plans and specifications were incorporated by reference into the agreement; that Buchman failed to comply with the written notice provisions of its contract; and that Buchman did not meet its burden of proof as to the claimed breach of contract.

The determination of what comprises the University-Buchman contract is basic to the resolution of these issues. The law in this regard is that as stated in 13 Am. Jur. 2d, Building and Construction Contracts, § 12:

"It is generally held that where a building contract refers to

the plans and specifications and so makes them a part of itself, the contract is to be construed as to its terms and scope together with the plans and specifications. Where the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though physically incorporated in the very contract itself."

See, also, 4 Dunnell, Dig. (3 ed.) § 1842; Shaw v. First Baptist Church of Winona, 44 Minn. 22, 46 N. W. 146 (1890).

The University asserts that the plans and specifications were incorporated by reference into Article I of the agreement signed by the parties. Article I reads as follows:

"The Contractor [Buchman] shall and will provide all the materials and perform all the work for the Mechanical Construction Work for the Additions and Alterations to the Veterans of Foreign Wars Cancer Research Center located on the University of Minnesota Minneapolis Campus, Minneapolis, Minnesota, in accordance with the plans and specifications prepared by Ellerbe Architects, 333 Sibley Street, St. Paul, Minnesota, 55101, dated March 6, 1968 and Addenda No's. 1 and 2 to the plans and specifications in which bids were received at 2:00 P.M. April 9, 1968 by Tracy S. Page, Jr., Purchasing Agent for the University of Minnesota. BASE BID: Mechanical Construction Work * * * as shown on the drawings and described in the specifications prepared by Architect, which drawings and specifications are a part of this contract."

It would appear that the plans and specifications were validly incorporated by reference in that there was a clear intent to incorporate shown, and they were clearly and unambiguously referred to in Article I. 4 Dunnell, Dig. (3 ed.) § 1831.

■ Such being the case, we come to the issue of whether Buchman complied with the terms of the contract. Paragraph 1.26 reads:

"If Contractor [Buchman] claims any instructions, latent conditions or otherwise involves extra cost under this contract,

he shall make claim for extra cost in writing within ten days after such instruction or observance of conditions. Claims made after this time, or not made in writing, will be refused and no claim shall be valid unless so made."

Paragraph 1.28 reads:

"If either party to the contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage. Claims under this clause shall be made in writing to the party liable and within a reasonable time from the first observance of such damage and not later than the time of final payment, except as expressly stipulated otherwise. In the case of faulty work or materials, claims shall be settled by agreement."

The trial judge found that written notice to the University was a condition precedent to Buchman's contractual claim. The law in this area is that, in the absence of a waiver, conditions of this type are valid and for the protection of the party for whom the work is done. Macri v. United States, 353 F. 2d 804 (9 Cir. 1965); Anthony P. Miller, Inc. v. United States, 111 Ct. Cl. 252, 77 F. Supp. 209 (1948); United States v. Cunningham, 75 U.S. App. D. C. 95, 125 F. 2d 28 (1941); Plumley v. United States, 226 U. S. 545, 33 S. Ct. 139, 57 L. ed. 342 (1913). A notice provision of this type is designed to inform a party of delay and afford it an opportunity to eliminate the cause of the delay.

Buchman claims that written notice was not needed since the University had knowledge of the delay. The lower court characterized the oral complaints of Buchman as "griping" that in no way indicated an intention on the part of Buchman to make claim against the University for delay.

The parties were free to contract as to the type of notice that would be required. In this contract *written notice* was required. The trial court correctly found that written notice of claim was a condition precedent to Buchman's action.

■ Even assuming that the written-notice provision was not a condition precedent, we hold that Buchman has failed to prove a breach of contract. Buchman premised its action on the theory that the University warranted that Buchman would complete its contract within 200 days. For this proposition, Buchman points to Article VIII.

The law in this area is that a duty or liability to guarantee or to warrant performance to another must be found in the express provisions of the contract; it cannot arise solely by implication. Gilbane Building Co. v. United States, 166 Ct. Cl. 347, 333 F. 2d 867 (1964); United States v. Rice, 317 U. S. 61, 63 S. Ct. 120, 87 L. ed. 53 (1942); Crook Co. v. United States, 270 U. S. 4, 46 S. Ct. 184, 70 L. ed. 438 (1926). "It is settled, of course, that *mere* delay, *per se,* incident to the Government's making work or material available to a contractor is not compensable, in a claim for breach of contract, without a specific warranty." Commerce International Co., Inc. v. United States, 167 Ct. Cl. 529, 535, 338 F. 2d 81, 85 (1964).

The basic question is whether Article VIII is an express warranty or guarantee that the University would have the addition completed by Steele within 200 days so Buchman could complete its work on the project. We hold that it is not. In fact, other provisions of the contract suggest that delay was within the contemplation of the parties. Article VII of the agreement and paragraph 1.36 of the plans and specifications provide that a time extension will be granted Buchman if delayed by acts of the University, other contractors, or unavoidable casualty. This would seem to indicate that the parties contemplated delays and would disprove any assertion of a guarantee that the addition would be ready on the completion date fixed in the contract with Buchman.

■ There is little doubt that there was delay in completing this project but Buchman had to prove that this delay was proximately caused by the University's actions. Wunderlich Contracting Co. v. United States, 173 Ct. Cl. 180, 351 F. 2d 956 (1965);

Commerce International Co., Inc. v. United States, *supra*. The trial judge found that Buchman "had failed to prove that any delay it may have sustained was causally related to action of the University or Steele." Buchman alleged that Steele caused the delay but Buchman never presented evidence as to particular operations at identified locations during defined periods of time to establish that Buchman was affected by Steele's acts. The burden was on Buchman to show who caused the delay. This, it failed to do, and no inference as to cause can be drawn from the fact that the contract was completed 5 months behind schedule.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.