*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0223**

Contractors Edge, Inc.,
Appellant,

vs.

City of Mankato,
Respondent.

**Filed January 11, 2016
Affirmed
Reilly, Judge**

Blue Earth County District Court
File No. 07-CV-10-2311

Stephen F. Buterin, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota; and

Aaron A. Dean, Moss & Barnett, Minneapolis, Minnesota (for appellant)

James M. Strommen, James J. Thomson, Kennedy & Graven, Chartered, Minneapolis,
Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and

Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellant-contractor Contractors Edge, Inc. (CEI) challenges the district court's

judgment in this breach-of-contract action for extra work performed on a construction

contract. Appellant alleges that the district court erred by concluding that (1) appellant was

not entitled to additional compensation for extra work performed, and (2) appellant failed to comply with the claims process outlined in the contract. Because the district court's findings and conclusions are supported by the record and are not clearly erroneous, we affirm.

**FACTS**

In July 2009, the City of Mankato (the city) advertised for bids for Eastwood Energy Industrial Park-Power Drive Extension Project No. 08059 (the project). The project involved the extension of a city street in the northeast part of Mankato and included construction of a road, drainage facilities, a water main, a sanitary sewer, storm drains, grading, landscaping, a berm, and a type of drainage ditch known as a "bio-swale." The excavated material would be used for improvements or hauled to a stockpile site within one-half mile of the project. The contract documents provided that the city would designate the stockpile sites after awarding the contract. The location of the stockpile site was important to the cost of the project because it necessitated heavy equipment to move the excavated material, along with associated fuel and labor costs. The hauling route would be based on a city-approved "haul route" within the project itself.

Appellant interpreted the one-half mile haul distance to be measured by driving distance and submitted a bid of approximately $476,000, which was the lowest of the bids considered. On August 11, 2009, the city and CEI entered into a written contract for the project. The project was divided into three areas: the construction of Power Drive, the excavation for the west bio-swale, and the excavation for the east bio-swale. The city required the work to be completed by October 30, 2009. Jeff Johnson was the engineer for

2

the city.  The city designated Michael McCarty as the project engineer and Brian Bentdahl as the chief inspector.  CEI began work on the project in August 2009.

The contract documents for the project included the Engineers Joint Contract Documents Committee (EJCDC) Standard General Conditions (the general conditions).  Article 10 of the general conditions articulated the change-order process for "Changes in the Work; Claims."  The parties agreed that if they could not agree "on entitlement to, or on the amount or extent, if any, of an adjustment in the Contract Price or Contract Times, or both, that should be allowed as a result of a Work Change Directive, a Claim may be made therefor as provided in Paragraph 10.05."  Paragraph 10.05(B) provides:

> Written notice stating the general nature of each Claim shall be delivered by the claimant to Engineer and the other party to the Contract promptly (but in no event later than 30 days) after the start of the event giving rise thereto.  The responsibility to substantiate a Claim shall rest with the party making the Claim.  Notice of the amount or extent of the Claim, with supporting data shall be delivered to the Engineer and the other party to the Contract within 60-days after the start of such event (unless Engineer allows additional time for claimant to submit additional or more accurate data in support of such Claim).  A claim for an adjustment in contract price shall be prepared in accordance with the provisions of Paragraph 12.01.B . . . . Each claim shall be accompanied by claimant's written statement that the adjustment claimed is the entire adjustment to which the claimant believes it is entitled as a result of said event.  The opposing party shall submit any response to Engineer and the claimant within 30 days after receipt of claimant's last submittal.

The engineer had the authority to approve or deny any claim.  A denial would be considered "final and binding" unless the aggrieved party "invoke[s] the dispute resolution procedure set forth in [the general conditions] within 30 days of such action or denial."

3

Article 10 concludes: "No Claim for an adjustment in Contract Price or Contract Times will be valid if not submitted in accordance with this Paragraph 10.05." CEI acknowledges that Article 10 of the contract governs the change-order and claims process. During the course of construction, the parties agreed to six separate change orders, only one of which is in dispute.

On September 18, 2009, CEI's president, John Brindley, advised the project engineer and the city's chief inspector that CEI would require additional compensation because CEI would have to haul excess material from the west bio-swale berm at an increased hauling distance. CEI stated that the haul distance to the newly designated disposal area was over one-half mile, resulting in higher hauling costs. CEI declined to finish work on the west bio-swale until a change order was approved. On October 19, 2009, the project engineer prepared and signed Change Order 3 providing for a price increase of $160,722, for a total of $233,198, plus a 40-day extension of time to complete the project. The project engineer presented Change Order 3 to city engineer Jeff Johnson, who did not sign it. The change order was not sent to the city council for approval. Brindley believed that a valid change order was in place and CEI continued work on the project.

In November 2009, the city rescinded Change Order 3 on the ground that the straight-line measurement between the haul material and the dumpsite was less than the one-half mile distance provided for within the contract. The city advised CEI of the rescission. On December 1, 2009, CEI challenged the rescission and sent a letter to the city requesting payment under Change Order 3. The December 1 letter outlined the Change

Order 3 approval as understood by appellant, but did not include supporting documentation such as the number of hours involved, wage rates, or labor or material costs.

On December 3, 2009, CEI's counsel sent a letter to Jeff Johnson, the city engineer, entitled "Notice of Claim," and "provid[ing] CEI's notice of claim regarding the City of Mankato's purported rescission of Change Order 3." Like the earlier letter, the December 3 letter sought payment for extra work without providing detailed evidence supporting the claim in the way of number of hours worked, wage rates, or labor or material costs. Instead, the letter asserted a number of legal arguments and cited to legal authority, rather than to documentation supporting the extra work itself.

Johnson denied additional payment. CEI continued to work on the project, which was substantially completed in late December 2009. In June 2010, Johnson and the city manager signed an alternative version of Change Order 3 increasing the original contract price by $67,325.30. CEI did not sign this proposed change order or accept the proffered funds.

On July 1, 2010, CEI filed a complaint against the city alleging breach of contract, equitable estoppel, and violations of Minnesota's Prompt Payment Act under Minn. Stat. § 471.425 (2014). The parties filed cross-motions for dispositive relief and the district court conducted a summary-judgment hearing. In March 2011, the district court granted the city's motion for summary judgment. The district court considered: (1) whether the project engineer had actual or apparent authority to bind the city to the price increase in Change Order 3, (2) whether the city was liable for the increased contract price under a different legal theory, and (3) whether CEI was entitled to relief on its prompt-payment

5

claim. With respect to the first issue, the district court concluded that the project engineer lacked apparent authority to bind the city to a one-third price increase. The district court also concluded that CEI did not have a colorable equitable-estoppel claim. The district court further determined that, because there was not a binding and enforceable contract between the parties, CEI could not recover on its prompt-payment claim.

CEI appealed to this court. We affirmed in part, reversed in part, and remanded in an unpublished decision filed January 17, 2012. *Contractors Edge, Inc. v. City of Mankato*, No. A11-916, 2012 WL 118409 (Minn. App. Jan. 17, 2012), *rev. denied* (Minn. Mar. 28, 2012). We affirmed the district court's grant of summary judgment on CEI's change-order claim, concluding "that the district court did not err when it determined that the doctrine of equitable estoppel was not available to CEI." *Id*. at *7. However, we remanded "for consideration of CEI's damages under the various claims procedures of the contract." *Id*. at *8. We also reversed and remanded for consideration of CEI's prompt-payment claim. *Id*. The supreme court denied further review.

Following remand, CEI moved for leave to serve an amended complaint to assert claims for breach of contract, violation of the Minnesota's Prompt Payment act, and fraud. CEI claimed the first two counts were not meant to be "duplicative" of the claims asserted in the original complaint, but would "clarify" CEI's causes of action in light of the remand. The city moved for summary judgment on CEI's three proposed causes of action. The district court granted summary judgment in the city's favor on CEI's breach-of-contract and fraud claims but denied summary judgment on CEI's prompt-payment claim. The parties ultimately settled the prompt-payment claim. In this appeal CEI challenges the

district court's order granting summary judgment on its breach-of-contract and fraud claims.

## DECISION

CEI raises two issues on appeal: (1) whether the district court erred by dismissing its breach-of-contract claim as untimely, and (2) whether the district court failed to consider on remand whether CEI was entitled to damages on its breach-of-contract claim. A district court may dispose of an action on the merits if there is no genuine dispute regarding the material facts and a party is entitled to judgment under the law applicable to such facts. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997); Minn. R. Civ. P. 56.03. The district court must view the evidence in the light most favorable to the nonmoving party. *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 325 (Minn. 2010). "We review de novo the district court's grant of summary judgment to determine whether genuine issues of material fact exist and whether the district court erred in applying the law." *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013).

The interpretation of a contract is a question of law subject to de novo review. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). Contractual language is construed according to its plain and ordinary meaning, and we give effect to the intentions of the parties as expressed in the whole of the document. *Robert W. Carlstrom Co. v. German Evangelical Lutheran St. Paul's Congregation*, 662 N.W.2d 168, 171, 173 (Minn. App. 2003). We will enforce the agreement when the contractual language is clear and unambiguous. *Caldas*, 820 N.W.2d at 832. If the language is ambiguous, that is, susceptible to more than one reasonable interpretation, we may consider parol evidence

7

to determine the intent of the parties. *Id*. "Whether a contract is ambiguous is a question of law that we review de novo." *Id*.

## I.

CEI claims the district court erred by dismissing its breach-of-contract claim as untimely. On remand, the district court considered "whether or not summary judgment is appropriate on a claim of breach of contract based upon a claim procedure contained within the contract that is separate from a determination of the legal validity of Change Order 3." The district court concluded that Change Order 3 did not create a legally enforceable modification because "[t]here was no 'receipt' of a valid Change Order by [the city] because [it] had yet to approve of the Change Order." The district court held that CEI's December 1 and December 3, 2009 letters did not amount to notice of claim because the correspondence "[did] not reference the claim procedure the parties contracted to utilize in cases of disagreements on change in price and they do not provide the required supporting data under [Paragraph] 10.05(B)."

Several Minnesota cases discuss the notice-and-writing requirements for changed work. In the early case of *Standard Constr. Co. v. Nat'l Tea Co.*, 240 Minn. 422, 62 N.W.2d 201 (1953), the supreme court considered the circumstances under which a party is considered to have waived material aspects of the change-order process. In that case, the parties disputed several change orders that arose during the course of construction. *Id*. at 424-25, 62 N.W.2d at 203. The parties' contract required the contractor to present a correct account of the costs to the extent they deviated from the original contract. *Id*. at 428, 62 N.W.2d at 205. However, the evidence showed that "change orders were

8

frequently handled without regard to the method of procedure demanded by the contract," thereby establishing a practice which was "inconsistent with the quoted provision of the contract" and resulting in a waiver of the right to demand compliance with the contractual change-order provisions. *Id.* at 428-29, 62 N.W.2d at 205; *see also New Ulm Bldg. Ctr., Inc. v. Studtmann*, 302 Minn. 14, 16, 225 N.W.2d 4, 5 (1974) (holding that building owners waived contractual provision requiring documentation of extra work where they were "fully aware of the fact that extras were being included as the work progressed" and only disputed the cost of extras); *Lundstrom Const. Co. v. Dygert*, 254 Minn. 224, 94 N.W.2d 527, 534 (1959) (holding that contract provision requiring cost of extras to be agreed upon in advance in writing may be waived). Here, by contrast, the parties entered into six separate change orders. Unlike *Standard Constr. Co.*, there is no evidence that change orders in this case were "frequently handled without regard to the method of procedure demanded by the contract." 240 Minn. at 431, 62 N.W.2d at 206. Thus, we determine as an initial matter that the city cannot be considered to have waived written notice or change-order requirements.

Having determined as a threshold matter that the city did not waive the written change-order requirements, we are left with the primary rule that failure to comply with written notice requirements results in a contractor's inability to recover for extra work. *Buchman Plumbing Co. v. Regents of the Univ. of Minnesota*, 298 Minn. 328, 215 N.W.2d 479 (1974); 1 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law*, § 4:36.50 at 284 (West Group 2002 & Supp. 2015). The Minnesota Supreme Court adopted the rule in *Buchman Plumbing Co.* that parties are "free to contract

9

as to the type of notice that would be required" for an extra-work claim. 298 Minn. at 339, 215 N.W.2d at 486. In *Buchman Plumbing Co.*, the district court found that "written notice of claim was a condition precedent" to a breach-of-contract action and, therefore, determined that written notice was required for the action to proceed. *Id.* The supreme court affirmed on appeal. *Id.* The city argues that here, as in *Buchman Plumbing Co.*, the parties agreed in paragraph 10.05(B) that written notice of the claim and "supporting data" were required elements under the contract, and CEI did not support its extra-work claim with supporting data. CEI argues that *Buchman Plumbing Co.* is inapposite because the plaintiff in that case failed to provide any kind of written notice for its claim, whereas CEI provided notice in its December 1 and 3, 2009 letters. Based upon the plain language of the contract, we determine the contract required the parties to provide written notice of any claim in the manner described in Paragraph 10.05. CEI did not provide written notice of its extra-work claim as required by the contract. We agree with the district court's interpretation of the contract and conclude that written notice of the extra-work claim was required under the plain and unambiguous terms of the contract.

CEI argues that its December 3, 2009 claim letter relating to Change Order 3 also supports its extra-work claim. Change Order 3 and the extra-work claim are distinct causes of action. It is undisputed that CEI and the city contracted for completion of the construction project. Although CEI argues that it performed extra work at the city's request, the evidence does not demonstrate that the parties entered into a separate contract memorializing this agreement. *See Cooke v. Belzer*, 413 N.W.2d 623, 627 (Minn. App.

10

1987) (recognizing that parties must intend to contract and agree on consideration in order to form a binding contract).

The city claims that CEI failed to provide supporting data for its extra-work claim. "Just what constitutes proper written notice . . . is given more leniency than whether any notice was given, but still it is not the case that 'anything goes.'" Bruner & O'Connor, Jr., *supra*, § 4:36.50 at 284. Quoting *Liberty Mgmt. & Constr. Ltd. v. Fifth Ave. & Sixty-Sixth St. Corp.*, the city notes supporting data includes items such as "the number of hours involved and wage rate in the case of labor charges, the cost and underlying invoices therefor in the case of materials and the underlying invoices in the case of appliances." 620 N.Y.D. 2d 827, 828 (N.Y. Sup. Ct. 1st Div. 1995); *see also* Bruner & O'Connor, Jr., *supra*, § 4:55 at 632 (enumerating 21 contractor accounting records of "special importance" to documenting construction claims in the change-order process). Paragraph 10.05 unequivocally provides that: "[t]he responsibility to substantiate a Claim shall rest with the party making the Claim." Notice of the amount of the claim and supporting data must be delivered to the engineer "within 60-days after the start of such event." The parties agreed that a claim for an adjustment in the contract price would only be valid if submitted in accordance with Paragraph 10.05. *See Buchman Plumbing Co.*, 298 Minn. at 339, 215 N.W.2d at 486 (affirming that a claim would not be valid unless submitted according to contract terms); *D.H. Blattner & Sons, Inc. v. Firemen's Ins. Co. of Newark*, 535 N.W.2d 671, 675-76 (Minn. App. 1995) (holding that where contract is silent, increased costs of performance of contract are responsibility of promisor). Based upon our review of governing Minnesota caselaw, we determine that the district court did not err by concluding

11

that CEI is not entitled to relief on its extra-work claim because it failed to comply with the contractual requirements plainly set forth in the parties' agreement.

## II.

CEI next claims that the district court failed to consider on remand whether CEI was entitled to damages under the contract's force-account provision. On remand, the district court must "execute the mandate" of the appellate court "strictly according to its terms." *Halverson v. Vill. of Deerwood*, 322 N.W.2d 761, 766 (Minn. 1982). It may not "alter, amend, or modify" the appellate court's mandate. *Id.* We review a district court's compliance with remand instructions under an abuse-of-discretion standard. *Janssen v. Best & Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn. 2005).

In our remand order, we noted there was an "alternative contractual theory" that the district court did not address and we remanded "for consideration of CEI's damages under the various claims procedures of the contract." *Contractors Edge, Inc.*, 2012 WL 118409, at *8. We referenced MnDOT's Standard Specifications for Construction (2005) (MnDOT Specs), which outline a claim process known as a "force account" utilized when a contractor performs extra work and the parties do not agree on a price. *Id.* MnDOT Specs § 1403 provides that a contractor will perform unforeseen work not included in the original contract and receive payment as "Extra Work in accordance with [section] 1904, provided a Supplemental Agreement is executed and approved." Section 1904 governs extra and force-account work and cautions that payment will not be made until the contractor has furnished the engineer with a detailed statement of the costs, including name, classification, date, daily hours, total hours, rate and extension for each laborer and foreman; information

12

on each unit of machinery and equipment; quantities of materials, prices, and extension; transportation costs; and invoices for materials used. The city argues that CEI did not submit evidence demonstrating compliance with MnDOT Specs' requirements.

While the MnDOT Specs do not provide a time limit for a force-account claim, the EJCDC general conditions require a party to provide notice of the claim within 30 days and supporting data within 60 days. The parties incorporated the MnDOT Specs by reference into their contract. "Where several instruments are made part of one transaction, they will be read together and each will be construed with reference to the others." *Marso v. Mankato Clinic, Ltd*., 278 Minn. 104, 114, 153 N.W.2d 281, 289 (1967). The city argues that the time limits "cannot be read out of the contract," and we agree. The EJCDC general conditions incorporated MnDOT Specs and the provisions must be construed as a whole and harmonized. *Chergosky v. Crosstown Bell, Inc*., 463 N.W.2d 522, 525 (Minn. 1990). The parties elected to include a 30-day claims-notice period in the contract. CEI improperly attempted to assert a force-account breach-of-contract claim outside of this time period.

CEI argues the district court did not analyze CEI's claim for relief under a force-account theory and failed to execute this court's remand instructions. The district court did not specifically analyze whether CEI was entitled to relief under MnDOT Specs § 1904, but we did not instruct it to do so. Instead, we remanded for consideration of "various claims procedures." While a district court may not modify the appellate court's mandate on remand, it has "broad discretion to determine how to proceed on remand [and] may act in any way not inconsistent with the remand instructions provided." *Janssen*, 704 N.W.2d

13

at 763.  The district court considered "whether or not summary judgment is appropriate on a claim of breach of contract based upon a claim procedure contained within the contract that is separate from a determination of the legal validity of Change Order 3."  The district court reviewed the evidence in the record and concluded that any claim must be made in accordance with Paragraph 10.05 of the general conditions of the parties' contract.  We hold the district court followed our instructions on remand and acted within its discretion.

**Affirmed.**