HEDBERG & SONS CO. v. AMBROSE J. GALVIN
AND ANOTHER, COPARTNERS d.b.a. GALVIN
& KULAS CEMENT CO., AND ANOTHER.
THE NEW AMSTERDAM CASUALTY COMPANY
OF NEW YORK, RESPONDENT.

144 N. W. (2d) 263.

July 15, 1966—Nos. 40,107, 40,108.

*O. A. Brecke* and *J. Robert Nygren,* for appellant.
*Taylor Law Firm* and *Elmer W. Foster,* for respondent.

FRANK T. GALLAGHER, C.

This is a consolidated appeal arising out of two separate actions brought by Hedberg & Sons Co. against Galvin & Kulas Cement Co., a partnership, and A. J. Galvin, individually, both hereinafter referred to as principals, in which actions The New Amsterdam Casualty Company of New York was joined as surety defendant. Plaintiff alleged that the principals and the surety executed and delivered to the city of Minneapolis surety bonds guaranteeing, among other things, that the principals would fully

and promptly pay for any and all material furnished to them and used in the construction of concrete masonry and finished cement work in the city; that during the period covered by the surety bonds plaintiff sold and delivered to the principals material to be used for concrete construction work in the city; that no part of the agreed price for the material was paid; and that the principals and their surety were therefore liable for the default in payments. The principals did not appear at the trial so the two cases were tried against the surety company alone. In both cases the trial court found in favor of the surety, and this appeal is from the judgments entered therein.

The only issue raised on appeal is whether the plaintiff, as simply a supplier of material to the principals, can maintain these actions against the surety as a third-party beneficiary. The trial court answered in the negative on the grounds that the construction work was not done for plaintiff and that plaintiff therefore was not one for whose benefit the bonds were given. We hold that the trial court did not err in making this determination.

The surety bonds were furnished the city of Minneapolis, as required by Minneapolis Code of Ordinances, § 320.080, to enable the principals to obtain a license for conducting business as concrete masonry and finish cement contractors in the city. That section provides in relevant part:

"No license hereunder shall be issued in any case until the applicant therefor * * * shall furnish a surety bond to the City in the sum of $5,000 running to the City *for the benefit of and to protect any person for whom such cement work shall be done from loss* or damage *arising out of the licensee's* failure to comply with any specifications pertaining to such work, the use of inferior materials, incompetent work, *failure to pay for labor and materials,* and to guarantee the full and proper performance of all contracts entered into for the performance of such work by the licensee. Said surety bond shall first be approved as to form and execution by the City Attorney before a license may issue." (Italics supplied.)

There can be no dispute that the language in the surety bonds was intended to incorporate in all respects the exact language and purpose of

the ordinance.[1] The issue is therefore ultimately one of statutory interpretation.

Plaintiff contends that the surety bond required under the city ordinance was intended to be in effect a performance bond. Plaintiff reasons that this is the only interpretation which will give full effect to the ordinance's underlying purpose of protecting "any person for whom such cement work shall be done" (hereinafter the owner). By allowing a laborer or materialman to bring an action under the bond against the contractor, the owner is able to avoid having liens filed against his property and an action brought to determine the validity and amount of such liens. Plaintiff considers as controlling St. Paul Foundry Co. v. Evenson, 169 Minn. 485, 487, 211 N. W. 834, 835, 213 N. W. 352, where the court said that a performance bond would "protect [the owner] against a suit to enforce a lien resulting in vexatious and protracted litigation." Hence, in order to fully protect the *owner's* undisputed rights as a third-party beneficiary, the ordinance must have intended to make laborers and materialmen third-party beneficiaries also. Plaintiff finds support for this interpretation in the ordinance which provides that the owner is to be protected from loss arising out of the licensee's "failure to pay for labor and materials."

It must be conceded that plaintiff's interpretation of the ordinance would afford the owner more effective protection from loss arising out of the licensee's failure to pay for labor and materials. The trouble with plaintiff's argument, however, is that the language in the ordinance simply does not support such an interpretation. The ordinance expressly states that the surety bond is intended to "benefit" and "protect any person

---

[1] The surety bonds expressly provide that the parties thereto entered into the contract in order to meet the licensing requirements under the ordinance, and to that end the principals obligated themselves to "indemnify * * * all persons * * * from any loss * * * arising out of such licensee's * * * failure to pay for labor and material, * * * *all in accordance with the terms of the above named ordinance which is hereby made a part hereof by reference as fully and to the same effect as if set forth verbatim herein* * * *." (Italics supplied.) See, Graybar Elec. Co. v. St. Paul Mercury Ind. Co. 208 Minn. 478, 294 N. W. 654; Anchor Cas. Co. v. Commr. of Securities, 259 Minn. 277, 107 N. W. (2d) 234.

for whom such cement work shall be done," and, as the trial court said, it is impossible to see how the plaintiff can be placed in that category. Although we have constantly been willing to give full force and effect to the rights of third-party beneficiaries, we have always required as a prerequisite some expression of intent on the part of the contracting parties that the person asserting such rights is to be a beneficiary of that contract.[2] There is no reason why this policy should not equally apply in interpreting the intent of a city ordinance. Since plaintiff does not fall within the category of beneficiaries contemplated in the ordinance, his appeal must fail.

Plaintiff's reliance on St. Paul Foundry Co. v. Evenson, 169 Minn. 485, 211 N. W. 834, 213 N. W. 352, is misplaced for the very reason we have cited for affirmance in this case. There the contractor became the principal in a surety bond "for the use of the said Eveleth Elks Building Corporation [the owner] *and also for the use of all persons who may perform* any work or labor, or *furnish any* skill, tools, machinery, or *materials* under, or for the purpose of, the contract hereinafter mentioned." (Italics supplied.) As stated by the court (169 Minn. 486, 211 N. W. 834):

"The bond was intended to give persons in the position of the plaintiff [a materialman] the right to maintain an action upon it. The language would be purposeless if this were not so."

It is the absence of such language in the instant case which is the distinguishing feature. See, also, Horton v. Crowley Elec. Co. 108 Minn. 508, 122 N. W. 312; La Mourea v. Rhude, 209 Minn. 53, 295 N. W. 304.

The fact that the surety bond is intended to protect only the person for whom the work is done does not strip of any meaning the indemnification from "failure to pay for labor and material." If the licensee con-

---

[2] Gjovik v. Bemidji Local Bus Line, 223 Minn. 522, 27 N. W. (2d) 273; Northern Nat. Bank v. Northern Minn. Nat. Bank, 244 Minn. 202, 70 N. W. (2d) 118; Segal v. Bloom Brothers Co. 249 Minn. 367, 82 N. W. (2d) 359; 17 Am. Jur. (2d) Contracts, § 304; Annotations, 77 A. L. R. 28 and 118 A. L. R. 60, 61; Restatement, Contracts, § 133, *illustration* 4.

tractor fails to pay his laborers or materialmen and they impose a mechanics lien on the owner's property, the owner will then be able to fall back on the surety bond for protection. It is up to the laborers or materialmen, however, to invoke the mechanics lien statute for their protection.[3]

Affirmed.

---

[3] Statutes do often require performance bonds of contractors performing contracts for public buildings or improvements. E. g., Minn. St. 574.26. One of the reasons for extending protection in these cases to laborers and materialmen is brought out in 43 Am. Jur., Public Works and Contracts, § 145: "* * * Without such bond laborers and materialmen may suffer much injustice and loss by reason of the failure of irresponsible contractors to pay for the labor and material used in making public improvements, in view of the fact that *such laborers and materialmen ordinarily have no right to a mechanic's lien upon public property.*" (Italics supplied.) Such a situation clearly did not exist in the case at hand. See, Horton v. Crowley Elec. Co. 108 Minn. 508, 122 N. W. 312.