**The CRETEX COMPANIES, INC., Respondent,**

and

**Ess Brothers & Sons, Inc., Respondent,**

v.

**CONSTRUCTION LEADERS, INC., Defendant,**

**Travelers Indemnity Company, Appellant.**

No. CX–82–1676.

Supreme Court of Minnesota.

Jan. 13, 1984.

Fabyanske, Svoboda & Westra, M.T. Fabyanske, St. Paul, for defendant Const. Leaders, Inc., and appellant Travelers Indem. Co.

Dorsey & Whitney, Steven K. Champlin, Minneapolis, for respondent Cretex Companies.

Lang, Pauly & Gregerson, Ltd., Joseph A. Nilan, Minneapolis, for respondent Ess Bros. & Sons, Inc.

SIMONETT, Justice.

We conclude that unpaid materialmen, plaintiff-respondents on this appeal, are not intended third-party beneficiaries under the defaulting general contractor's performance bond and, therefore, are not entitled to recover from the defendant-appellant surety. We reverse the trial court.

Northland Mortgage Company owns property in Maple Grove and Plymouth, Minnesota. It engaged defendant Construction Leaders, Inc., as its general contractor, to do the utilities construction for the development projects on the two properties. Defendant-appellant Travelers Indemnity Company wrote the performance bonds for the construction projects. There were two construction contracts and, since the work was to be done in five phases, five performance bonds. For each performance bond Travelers was the surety, Construction Leaders, Inc., as general contractor, was the principal, and Northland Mortgage Company, as owner of the projects, was the obligee.

Thereafter, during the course of its work, Construction Leaders defaulted and is now apparently insolvent. Travelers

stepped in and hired another contractor, who completed the work. Some of Construction Leader's suppliers and subcontractors, however, were left unpaid, including plaintiff-respondents, The Cretex Companies, Inc., and Ess Brothers & Sons, Inc. Although Cretex and Ess Brothers could have filed mechanic's liens against Northland's property, they failed to do so; apparently they assumed their materials were to be used by the general contractor on public projects and they did not discover otherwise until it was too late to file liens. Having lost their lien rights, Cretex and Ess Brothers brought this action against Travelers in an attempt to collect on the performance bonds. In addition, plaintiffs sued the general contractor, Construction Leaders, for breach of their subcontracts.

On cross-motions for summary judgment, the trial court granted summary judgment in favor of the plaintiff suppliers against both the surety and the general contractor on the issue of liability. The parties then stipulated to the amount of damages. Travelers alone appeals, raising only the issue whether plaintiffs are entitled to recover their unpaid claims under the performance bonds.

The issue is whether unpaid materialmen are third-party intended beneficiaries under Travelers' bonds. First of all, it should be noted that the two construction contracts between Northland (the owner) and Construction Leaders (the general contractor) plainly call for a performance rather than a payment bond. The contracts require:

A good and sufficient *performance bond* in the sum of not less than the full amount of the Contract, payable to the Owner, as provided by law, shall be made and delivered * * *.

The *Performance Bond* shall guarantee the Contractors: [sic] performance as required by these Contract Documents,

satisfaction of all lein [sic] rights of Subcontractors and materials suppliers, * *.

(Emphasis added.)

Pursuant to this contract requirement, Travelers, as surety, issued its "Contract Bond" with Construction Leaders as principal and Northland as obligee, providing:

NOW, THEREFORE, the condition of this obligation is such, that if the Principal shall faithfully perform the contract on his part, free and clear of all liens arising out of claims for labor and materials entering into the construction, and indemnify and save harmless the Obligee from all loss, cost or damage which he may suffer by reason of the failure so to do, then this obligation shall be void; otherwise to remain in full force and effect.

It seems clear enough, at least so far, that the contracting parties intended to have only a performance bond. The purpose of a performance bond is to ensure that the principal or his surety will perform the contract for an agreed price. Because performance of the work alone is not sufficient to protect the owner-obligee, the surety also agrees to indemnify the owner-obligee for any loss from liens filed against the property by reason of the contractor-principal's default in payment of his materialmen. Thus Travelers claims here that its bonds were intended for the exclusive use and benefit of its obligee, Northland, and afford no contractual rights to third-party subcontractors or suppliers.

Travelers points out that if the owner and general contractor had wished to protect third-party materialmen they could have purchased, for a separate premium, a "labor and material payment bond," a bond which Travelers also sells and which is usually issued simultaneously with the performance bond. A "payment" bond expressly provides for the surety to pay the claims of third-party subcontractors and materialmen if the general contractor fails to do so.[1] The distinction between per-

---

**1.** Thus Travelers' form of "labor and material payment bond" reads that the surety is bound to the owner-obligee "for the use and benefit of claimants as hereinbelow defined," and the bond then defines claimants as those having a contract with the principal to provide materials and services.

formance bonds and payment bonds is well recognized in the construction industry; the two bonds cover different risks and premiums are set accordingly. *See, e.g., Scales-Douwes Corp. v. Paulaura Realty Corp.*, 24 N.Y.2d 724, 301 N.Y.S.2d 980, 249 N.E.2d 760 (1969); J. Calamari & J. Perillo, *Contracts* § 17–7 (2d ed. 1977); A. Corbin, *Contracts* § 798 (Supp.1982).

Plaintiff-respondents argue, however, that though Travelers' bond may be in form a "performance" bond, intended for the protection of the owner-obligee, it is also in fact a "payment" bond, intended for the benefit of third persons who are not parties to the surety's contract. To reach this conclusion, respondents rely on the third-party contract beneficiary doctrine.

The trial court found, and Travelers does not dispute, that the provisions of the underlying construction contracts are incorporated by reference into the bonds, and apparently not just for identification purposes. Each bond identifies the construction contract between Northland and Construction Leaders and adds "a copy of which is by reference made a part hereof." Among other things, section 9 of the construction contract reads that "the Contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work." Other sections provide that if the contractor fails to pay subcontractors or materialmen, the owner may terminate the contract or withhold payments. From this respondents argue as follows:. the bond is conditioned on full and faithful performance of the construction contract by the principal-general contractor; performance of the contract by the contractor includes payment by the contractor of the claims of his subcontractors and materialmen; therefore, the surety has agreed that if the contractor does not pay his suppliers, the surety will do it for him, thus making the suppliers third-party intended beneficiaries of the bond. The trial court accepted this argument, relying also on Restatement of Securities, § 165 (1940), and two cases, *Westinghouse Electric Corp. v. Mill & El-*

*evator Co.*, 254 Iowa 874, 118 N.W.2d 528 (1962), and *Iowa Sheet Metal Contractors, Inc. v. Knab Co.*, 17 Wis.2d 493, 117 N.W.2d 682 (1962).

The parties all cite *Buchman Plumbing Co. v. Regents of the University of Minnesota*, 298 Minn. 328, 215 N.W.2d 479 (1974), as setting out the controlling test or tests for a third-party contract beneficiary. There we described two tests: first, an "intent to benefit" test, *i.e.*, the contract must express some intent by the parties to benefit the third party through contractual performance; and, second, a "duty owed" test, *i.e.*, that the promisor's performance under the contract must discharge a duty otherwise owed the third party by the promisee. Respondents contend that the "duty owed" requirement is satisfied in this case where payment of their claims by the surety would discharge a duty owed them by Northland, as owner of the project improved at their expense. We disagree. Clearly, Northland has no legal responsibility to pay the subcontractors and materialmen who made their own separate contracts with the general contractor. *Duluth Lumber & Plywood Co. v. Delta Development, Inc.*, 281 N.W.2d 377, 384 (Minn. 1979). Indeed, plaintiffs seem to concede as much because they have not sued Northland. Consequently, if plaintiffs are to recover on the bonds, they must do so under the "intent to benefit" test. Travelers, however, reads *Buchman* to require that *both* the "duty owed" and the "intent to benefit" tests must be met before a third party obtains rights in the contract. Although the language in *Buchman* is somewhat opaque, we do not think this is what *Buchman* requires or says.

At this point, it may be helpful to review briefly the status of our third-party contract beneficiary law. By 1940 this court, relying on Restatement of Contracts § 133 (1932), was recognizing three kinds of third-party contract beneficiaries: creditor, donee, and incidental. In *Northern National Bank v. Northern Minnesota National Bank*, 244 Minn. 202, 209, 70 N.W.2d 118, 124 (1955), we defined, in dic-

tum, a donee beneficiary as "one to whom the promisee intends to make a gift." In *Buchman, supra,* we observed in a footnote that the then tentative draft of the second edition of the Restatement of Contracts proposed to substitute the term "intended" beneficiary for both "creditor" and "donee" beneficiary. *Id.,* 298 Minn. at 333–34 n. 2, 215 N.W.2d at 483 n. 2. This proposed change was, indeed, incorporated into Restatement (Second) of Contracts in 1979 and appears at section 302. The Reporter's note explains that the new classification between "intended" and "incidental" beneficiaries eliminates the subclass of "donee beneficiary" which has proved confusing in the many instances where the promisee's purpose is not "to make a gift" but "to confer a right." In *Duluth Lumber & Plywood Co. v. Delta Development, Inc.,* 281 N.W.2d 377 (1979), we used the new "intended-incidental" analysis. There a materialman sued as a third-party beneficiary under a Housing and Urban Development contract made with the Housing Authority of the Indian reservation for construction work to be performed on the Indian reservation. Because the property was public, no liens could be filed. We found no duty owed by the owner to pay the materialman but nevertheless found that the materialman was an "intended beneficiary" under the HUD contract. For an earlier use of an "intended beneficiary" test in a setting similar to this appeal, see *Hedberg & Sons Co. v. Galvin,* 274 Minn. 422, 144 N.W.2d 263 (1966).

We hereby adopt the intended beneficiary approach outlined in Restatement (Second) of Contracts § 302 (1979). Under this approach, if recognition of third-party beneficiary rights is "appropriate" and *either* the duty owed *or* the intent to benefit test is met, the third party can recover as an "intended beneficiary." For the third party to recover, there is no need to satisfy *both* the duty owed and the in-

tent to benefit tests, and, contrary to Travelers' contention, the language in *Buchman* does not so require. Consequently, even though respondent materialmen have failed to meet the "duty owed" test here, they may still recover if they can show an intent by the contracting parties to confer on them a benefit. We conclude, however, that the requisite intent to make subcontractors and materialmen third-party intended beneficiaries of Travelers' bonds is not shown here and that plaintiff-respondents are, at best, incidental third-party beneficiaries.

Travelers' performance bond, read alone, evidences an intent to protect and benefit only the owner-obligee. Plaintiff-respondent argues, however, that if the underlying construction contract is read as part of the bond, a further intent to confer a benefit on materialmen appears, notwithstanding that the construction contract itself expressly states that the general contractor need furnish only a performance bond. Because the contractor promises in the construction contract to "pay for all materials [and] labor," respondents contend that the surety's "guaranty" of this promise shows an intent by the parties to the bond to confer a benefit on those who have furnished the materials and labor. We do not think this conclusion necessarily follows, for while in fact the materialmen receive a benefit when paid by the surety, the issue is whether that benefit was intended by the contracting parties.

Other courts have reached differing results on whether materialmen can recover on a performance bond, the result often depending on the particular facts of the case, particularly the wording of the bond. *See, e.g.,* 17 Am.Jur.2d *Contractors' Bonds* §§ 16–24 (1964); Annot. 118 A.L.R. 57 (1939); Annot. 77 A.L.R. 21 (1932). Many of the cases allowing recovery have relied on Restatement of Securities § 165 (1941),[2]

---

**2.** Restatement of Securities § 165 (1941) provides:

> Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor

> and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless

while cases disallowing recovery have, in turn, cited section 166 of the same Restatement.[3]

The contract must be read in the light of all the circumstances and it is pertinent, in ascertaining intent, to inquire to whom performance is to be rendered. *Buchman,* 298 Minn. at 334, 215 N.W.2d at 483. Here we are dealing with a contract of suretyship and, it seems to us, the fair import of this contract is that the contracting parties intended the surety's performance to be rendered to Northland, the owner-obligee, not to the materialmen. The language of the bond, quite clearly, intends to make certain (1) that the contract will be performed; (2) that the property will be "free and clear of all liens arising out of claims for labor and materials entering into the construction"; and (3) that the owner-obligee will be indemnified and saved harmless from all loss "which he may suffer by reason of the failure so to do." In other words, if the contractor-principal defaults, the surety is obligated to complete the project. If there are any liens filed, the surety is obligated to satisfy them—and the lienholders, quite plainly, would be third-party intended beneficiaries of the bond. If, finally, there are any materialmen left unpaid by the defaulting contractor who have failed to file liens, the surety need only pay these claims to the extent necessary to save the owner-obligee harmless from loss by reason of the contractor-principal's failure "so to do." These obligations the surety must perform to the amount of the bond. If unpaid, non-lienholding subcontractors can collect under the bond, the fund provided by the bond might be so depleted as to jeopardize completion of the project, which would surely be contrary to the intent of the contracting parties.

Another circumstance to be considered in ascertaining the intent of the parties is whether the suretyship contract is for a private or public construction project. There would seem to be no reason for the contracting parties to intend to confer a benefit on materialmen who can protect their own interests by filing liens against the property. In *Hedberg & Sons Co. v. Galvin,* 274 Minn. 422, 144 N.W.2d 263 (1966), the surety issued a bond to a cement contractor, guaranteeing, as required by a city ordinance licensing contractors, that the contractor would pay for any materials used by him in his construction projects "for the benefit of and to protect any person for whom such cement work shall be done." It was held that the bond was not intended for the protection of the unpaid materialmen but for the owner, for whom the "work shall be done." We stated that if unpaid materialmen wanted to be protected their recourse was to file a lien on the owner's property, whereupon the owner would have the surety bond for protection. We think these same considerations are relevant here. In *Duluth Lumber & Plywood Co. v. Delta Development, Inc.,* 281 N.W.2d 377, 385 (Minn.1979), by way of significant contrast, we held unpaid materialmen to be third-party intended beneficiaries of a contract for the disbursement of federal funds for payment of housing on an Indian reservation because "if construction work is performed on public property that is exempt from a mechanics lien, then promises in the contract concerning payment of materialmen will be deemed to be for the benefit of the materialmen because the public owner does not need

the surety's contract in terms disclaims liability to such persons.
Cases relying on this section include *Amelco Window Corp. v. Federal Ins. Co.,* 127 N.J.Super. 342, 317 A.2d 398 (1974), and *Royal Indemnity Co. v. Alexander Ind., Inc.,* 58 Del. 548, 211 A.2d 919 (1965).

**3.** Restatement of Securities § 166 (1941) provides:

Where a surety guarantees the performance of a contract by a contractor who does not promise the owner to pay those furnishing labor or materials but agrees to complete the work free of liens or to furnish labor and materials, laborers and materialmen have no rights against the surety.
Cases relying on this section include *Tri-State Ins. v. United States,* 340 F.2d 542 (8th Cir.1965); and *Wyoming Mach. Co. v. United States Fidelity & Guar. Co.,* 614 P.2d 716 (Wyo.1980).

protection against a mechanics lien and because of the injustice which would otherwise be suffered by the materialmen who have no lien rights."

 While we acknowledge that third-party recovery is warranted in cases where the surety bond explicitly or by reasonable implication expresses an intent to benefit third-party subcontractors and materialmen, we do not believe an "intent to benefit" third parties should be imputed to a surety on the basis of a private construction contract to which that surety was not a party, when the language of the surety's bond, though incorporating the construction contract by reference, evinces no more than an incidental intent to benefit those third parties. We hold that plaintiff-respondents, as unpaid subcontractors and materialmen, are not third-party intended beneficiaries of Travelers' surety bonds covering performance of this private construction project.

Reversed.

YETKA, Justice (dissenting).

Travelers' bond obligates it "faithfully [to] perform the contract." The majority unnecessarily restricts this language when it holds that the surety is only obligated to "complete the project." Here, the Travelers' bond incorporated portions of the general contract between Northland and Construction Leaders. Section 9 of that contract contained language, as the majority acknowledges, which read as follows: "The Contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work." Under this language, the contract is not "performed" until all materials provided thereunder are paid for.

Construction jobs are not negotiated in a vacuum. Almost all of the parties, including subcontractors, are experienced people and are aware of the conditions of the general contract. If Travelers wanted to limit their obligation under the bond to completion of the project only, it should have clearly stated so. It did not; there-fore, in my opinion, the subcontractors had a right to rely on the conditions of the general contract as guaranteed by the bond.

I would affirm the trial court.