**CHARD REALTY, INC., Plaintiff and Third Party Plaintiff, Appellant,**

v.

**CITY OF SHAKOPEE, Defendant and Third Party Defendant, Respondent,**

**Richard Knutson, Inc., Respondent,**

**American Insurance Co., Defendant,**

v.

**VALLEY ENGINEERING, Third Party Defendant, Respondent,**

**Busse Construction, Inc., Third Party Defendant.**

No. C7–85–2282.

Court of Appeals of Minnesota.

Sept. 2, 1986.

Review Denied Nov. 19, 1986.

Theodore R. Mellby, Timothy L. Warnemunde, Montgomery, for Chard Realty, Inc.

Trevor R. Walsten, Susan L. Estill, Krass & Monroe Chartered, Shakopee, for City of Shakopee.

Gerald L. Svoboda, Dean B. Thomson, Fabyanske, Svoboda & Westra, St. Paul, for Richard Knutson, Inc. and American Ins. Co.

Mark H. Stromwall, Prior Lake, for Valley Engineering.

John H. Brennan, Minneapolis, for Busse Const., Inc.

Heard, considered and decided by LANSING, P.J., and PARKER and NIERENGARTEN, J.

## OPINION

LANSING, Judge.

Chard Realty, Inc., a developer, appeals the trial court's grant of summary judgment to the defendants in this suit alleging negligence, breach of contract, and overassessment of municipal property taxes. We affirm.

## FACTS

Chard Realty owned 47 lots located in the East View First Addition in Shakopee. In August 1979 the City of Shakopee adopted a resolution granting preliminary

approval of Chard Realty's proposed development of a subdivision there. On October 31, 1979, Chard and the city entered a developer's agreement for the purpose of financing construction of streets, water, sewer, and other public improvements. The developer agreed to pay for all improvements; however, Chard was responsible for constructing Plan A improvements, which consisted only of grading, and the city was responsible for constructing Plan B improvements, which consisted of roadways, sanitary and storm sewers, and watermains. The agreement contained a provision incorporating by reference all contracts let under the developer's agreement.[1]

The Plan B improvements were to be financed through the sale of improvement bonds, the cost of which was to be recouped as special assessments levied against each lot at an 8 percent interest rate. *See* Minn.Stat. § 429.091 (1984).

In June 1980 the city contracted with Richard Knutson, Inc., to construct the Division I improvements—sewers and watermains. Division II improvements—street grading—were to be done by a different contractor. The contract required Knutson to complete work within 60 days of being given written notice to proceed and assessed liquidated damages of $100 per day for each day of delay beyond the 60–day deadline. Knutson was given notice to proceed on June 1 and, because of problems in installing the watermains, was approximately 90 days late in completing its work.

In the meantime, on July 12, 1980, the city adopted a resolution declaring that the estimated cost of Plan B improvements would be $301,580.16. The city mailed notice of a public hearing, to take place August 19, to William Chard. Chard did not object at the special assessment hearing. After the hearing the city council adopted a resolution declaring the amount of the special assessment as $295,297.24. On August

26 the city mailed a notice of assessment to Chard reflecting that figure and an 8.75 percent interest rate.

Chard did not appeal the assessment. Instead, he wrote to the city on September 16 requesting reassessment of six lots, on the basis that pre-existing assessments made the additional assessments excessive. The city council subsequently amended the assessment roll, reducing the assessment on those six lots and increasing the assessment on the other 41 lots. The total amended assessment is $294,838.86. Chard did not appeal it.

In September 1982 Chard commenced this action. He alleged the city negligently inspected/supervised the installation of the water mains and breached both the developer's agreement and the contract between the city and Knutson; that Knutson negligently failed to perform his contract; that Knutson breached its contract with the city by failing to complete work in the time required; that Knutson negligently left rocks on Chard's property and moved property line markers; that the city demanded excess interest on the assessments and wrongfully kept the interest on bond proceeds; and that the American Insurance Co., as surety for Knutson, owes damages to Chard.

The defendants made various cross-claims and counterclaims on these allegations and then moved for summary judgment. At the hearing on the motion in July 1984, the parties agreed to dismiss the claim against Busse Construction, Inc. On August 27–28, 1984, the trial court granted summary judgment in favor of the remaining defendants on all allegations except Knutson's negligently leaving rocks on the property and moving property line markers. Those claims were settled in Novem-

---

1. Paragraph VIII(E) of the developer's agreement provides:

    *Incorporation by Reference.* All General and Special Condition Plans, special provisions, proposals, specifications and contract[s] for the Improvements furnished and let pursuant to this Agreement shall be and hereby are made part of this Agreement by reference as fully as if set out herein in full.

ber 1985 for $1,200. Chard appeals from the judgment subsequently entered.[2]

## ISSUES

1. Did Chard waive his objections to the special assessment by failing to object in accordance with Minn.Stat. § 429.081?

2. Is Chard entitled to the liquidated damages provided in the contract between the city and Knutson?

## ANALYSIS

### I

The trial court ruled that Chard waived his objections to the special assessment by failing to object in accordance with the procedure set out in Minn.Stat. § 429.081.

The resolution of assessment disputes is controlled by statute. No appeal may be taken as to the amount of any assessment unless a written objection signed by the affected property owner is filed with the municipal clerk prior to the assessment hearing or presented to the presiding officer at the hearing. Minn.Stat. § 429.061, subd. 1. All objections to the assessments not received at the assessment hearing are waived, unless the failure to object at the hearing is due to a reasonable cause. *Id.*, subd. 2. "All objections to the assessment shall be deemed waived" unless presented on appeal to the district court, which provides "the exclusive method of appeal from a special assessment levied pursuant to this chapter." § 429.081.

Chard not only failed to raise his objections at the hearing,[3] he failed to appeal to the district court. Chard argues he had

reasonable grounds for failing to object because he contacted the city administrator twice before the public hearing and was assured that the assessment was not final but would be adjusted to reflect the actual cost of the improvements. He also alleges that on several occasions *after* the August hearing, the mayor, a member of the city council, and the city administrator assured him the final assessment would not be made until the actual costs were known.

In *Sievert v. City of Lakefield,* 319 N.W.2d 43 (Minn.1982), the developer did not object to the special assessment before the city council or seek review by the district court. Instead, he brought suit two years later for breach of contract to supply improvements. The supreme court reversed a jury verdict for the developer, holding the statutory procedure is the exclusive method of appealing a special assessment, and the developer had waived his right to attack it. *Id.* at 44. Chard received notice of the hearing and assessment and must be deemed to have waived his objections.

Even assuming Chard's objections were not waived under the statute, there is no evidence to show that the actual costs were different from the amount assessed, even when the liquidated damages are offset. The city presented evidence that the actual cost of the Plan B improvements was $306,000, or $12,000 more than the amount assessed. There is no evidence in the record contradicting the city's actual cost figure.

### II

Chard claims he is entitled to the liquidated damages that were available under

2. On appeal Chard raised only the issues of his entitlement to reassessment and to the liquidated damages provided in the contract between the city and Knutson. No other claims were appealed, and on those claims the trial court's judgment must stand. *Lener v. St. Paul Fire & Marine Insurance Co.,* 263 N.W.2d 389, 390 (Minn.1978).

3. The developer's agreement provides for an 8 percent interest rate on special assessments. Minn.Stat. § 429.061, subd. 2, governs interest rates on special assessments:

All assessments shall bear interest at such rate as the resolution determines, not exceeding

eight percent per annum, except that the rate may in any event equal the average annual interest rate on bonds issued to finance the improvement for which the assessments are levied.

The interest rate on the bonds sold is 6.87 percent. The justification the city advanced to the trial court for the 8.75 percent rate is that "the interest rate was set in accordance with the City's special assessment policy of charging 2 percent plus .25 percent above the bond rate to cover, among other things, the State requirement of a 5 percent overlevy to allow for delinquencies."

the city's contract with Knutson. Two theories support his claim: (1) that he is entitled to the damages as a party to the developer's agreement; and (2) that they are available to him as a third-party beneficiary of the contract between the City of Shakopee and Knutson.

### Developer's Agreement

In Articles I through VII the developer's agreement sets out Chard's and the city's respective obligations as to Plan A and Plan B improvements. The agreement contains no deadlines for completion of the improvements. Article VIII, labeled "General," sets out a number of terms applicable to both parties relating to notice, release upon completion of work, plat approval, future modifications, and method of payment. In addition, Article VIII contains the incorporation clause quoted *supra* at n. 1, which provides that "[a]ll * * * contract[s] for the Improvements furnished and let pursuant to this Agreement shall be * * * made part of this Agreement by reference as fully as if set out herein in full."

■ The city's contract with Knutson was one for improvements let pursuant to the developer's agreement. It, in turn, contained the 60–day deadline and the liquidated damages provision, which says:

> *LIQUIDATED DAMAGES:* A sum in the amount of one hundred dollars ($100.00) *shall* be retained from the amount of compensation due the contractor for each calendar day beyond the completion day * * * that any work described in the contract documents remains uncompleted. The amount will be assessed not as penalty, but as a predetermined and agreed liquidated damage that will be sustained by [the city].

(Emphasis added).

This contract term was validly incorporated by reference. *See Buchman Plumbing Co., Inc. v. Regents of the University of Minnesota,* 298 Minn. 328, 337–38, 215 N.W.2d 479, 485–86 (1974). Therefore, the developer's agreement must be construed with the contract between the city and Knutson. *Id.* It follows that the city was obligated to retain the liquidated damages that accrued for delay and use them to reduce the cost of the assessments passed on to Chard.

■ It does not follow, however, that Chard may bring this action against the city to enforce his claim. His remedy was to object to the proposed assessment as provided for by statute. As the supreme court held in *Sievert,* the statutory method permits contract claims to be raised before the city council and on appeal. 319 N.W.2d at 44. Chard's failure to use the statutory procedure precludes this contract action against the city. Even if he had properly presented his claim, he has advanced no evidence to contradict the city's evidence that the cost of the improvements was substantially more than the amount of the assessment, even when the liquidated damages are offset.

### Shakopee-Knutson Contract

The trial court ruled that Chard is not an intended beneficiary of the contract between the city and Knutson. Chard contends he has presented a genuine issue of material fact as to whether he is a third-party beneficiary of the contract.

■ Minnesota has adopted the intended beneficiary approach outlined in the Restatement (Second) of Contracts § 302 (1979). *Cretex Companies v. Construction Leaders,* 342 N.W.2d 135, 139 (Minn. 1984). A third party may recover as an intended beneficiary by satisfying either the "intent to benefit" or "duty owed" test. *Id.* To establish an intent to benefit, the contract must express some intent by the parties to benefit the third party through contractual performance. *Id.* at 138. To establish a duty owed, the promisor's performance under the contract must discharge a duty otherwise owed the third party by the promisee. *Id.* Chard claims both tests are satisfied. We disagree.

■ The contract between the city and Knutson refers only to the city and Knutson as parties. The city controlled all

aspects of construction, including final approval. There is no reference to Chard in the contract. These documents evidence no intent to benefit Chard, and therefore he is not an intended beneficiary under the "intent to benefit" approach. *See Cretex,* 342 N.W.2d at 139–40.

■ As noted above, the developer's agreement contained no deadlines for completion of the improvements. The city's only legal responsibility was to "cause all further actions and proceedings to be taken with due diligence that are required for the construction of each improvement" financed wholly or partly from the proceeds of bonds issued by the city. *See* Minn.Stat. § 429.091. *Id.* The city had no duty to complete Division I improvements within 60 days. Therefore, Chard is not an intended beneficiary · under the "duty owed" approach.

In *Julian Johnson Construction Corp. v. Parranto,* 352 N.W.2d 808 (Minn.Ct.App. 1984), the developer and the city entered into a similar development agreement. The city contracted with a construction company to install utilities and roads; however, the developer also contracted directly with the construction company for other work. The developer was permitted to recover damages from the construction company under a third-party beneficiary theory because the developer, in scheduling its own work, relied on the completion date in the contract between the city and the construction company. That case differs from this one in that the "intent to benefit" found by the trial court could be supported by the developer's direct contract with the construction company and the construction company's specific knowledge that the developer relied on its timely completion of the work. The developer did not make a claim against the city, and the damages the developer sought were not connected to the assessment.

## DECISION

Chard waived any objection to the amount of the special assessment by failing to comply with the procedures established in Minn.Stat. § 429.081. Chard is not an intended beneficiary of the contract between the city and Knutson. The trial court did not err in granting summary judgment to the respondents.

Affirmed.