**NORWEST FINANCIAL LEASING, INC., an Iowa corporation, Plaintiff,**

v.

**MORGAN WHITNEY, INC., a Minnesota corporation, Morgan Whitney Partnership XXI, a Minnesota general partnership, Ronald E. Clark, Mansoor Alyeshmerni, James L. Crockarell, Charles B. Faegre, Venturian Corp., a Minnesota corporation, and Gary Rappaport, Defendants.**

Civ. No. 4–91–555.

United States District Court,
D. Minnesota,
Fourth Division.

March 24, 1992.

William Z. Pentelovitch, Mary R. Vasaly, Charles A. Hoffman, and Maslon, Edelman, Borman & Brand, Minneapolis, Minn., for plaintiff.

Timothy R. Thornton, Briggs & Morgan, Minneapolis, Minn., for defendants Venturian Corp. and Gary Rappaport.

William J. Keppel, Steven M. Christenson and Dorsey & Whitney, Minneapolis, Minn., for defendants Morgan Whitney, Inc., Morgan Whitney Partnership XXI, Ronald E. Clark, Mansoor Alyeshmerni, James L. Crockarell and Charles B. Faegre.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendants Venturian Corporation ("Venturian") and Gary Rappaport ("Rappaport") to dismiss Counts IV through X of plaintiff's complaint. Based on a review of the file, record and proceedings herein, the court grants the motion in part and denies the motion in part.

## BACKGROUND

Plaintiff Norwest Financial Leasing, Inc. ("Norwest Financial") brings various claims arising from the contamination of some industrial property in Hopkins, Minnesota ("the property"). On October

29, 1985, Venturian[1] agreed to sell the property to defendant Morgan Whitney, Inc. ("MWI") for $5,000,000. MWI obtained a mortgage commitment from MWF Mortgage Company dated November 7, 1985. At the closing on December 20, 1985, MWF Mortgage Corporation assigned the mortgage commitment to Midwest Federal Savings & Loan Association ("Midwest Federal"). MWI also executed and delivered to Midwest Federal a promissory note that was secured by a mortgage and a security agreement, a fixture financing statement and an assignment of rents and leases.

On January 27, 1986, MWI conveyed fee title to the property to Morgan Whitney Partnership XXI ("partnership"). In an August 31, 1988 contract, Midwest Federal assigned its entire interest in the transaction to Norwest Leasing Company, Inc. ("Norwest Leasing"). In December 1989, Norwest Leasing assigned the promissory note, mortgage and rent and lease assignment to plaintiff Norwest Financial.

In December 1989 or January 1990, the property was found to be contaminated with various volatile organic compounds. Norwest Financial commenced the present action in August 1991. In Counts IV, V and VI of the complaint, Norwest Financial seeks to rescind the purchase agreement between defendant Venturian (the seller) and defendant MWI (the buyer), arguing that it has standing to assert such claims as an intended third-party beneficiary of the purchase agreement.[2]

Counts VIII and X seek declaratory relief to determine future response cost liability under the Federal Comprehensive Environmental Response Compensation and Liability Act, 42 U.S. §§ 9601–9675 ("CERCLA") and the Minnesota Environmental Response and Liability Act, Minn.Stat. §§ 115B.01–.37 ("MERLA"). In Counts VII and IX, Norwest Financial seeks economic damages, under CERCLA and MERLA respectively, for the alleged diminution in the value of its interest in the property.

Defendants Venturian and Rappaport ("collectively as Venturian defendants") move to dismiss those claims. They argue that the rescission claims, Counts IV, V and VI, should be dismissed because Norwest Financial is not an intended beneficiary of the purchase agreement and has no standing to assert such claims. They further contend that even as a third-party beneficiary, Norwest Financial would have no standing to seek rescission of a fully performed purchase agreement to which it is not a party. The Venturian defendants also argue that the rescission claims fail because Norwest Financial has an adequate remedy at law and is incapable of restoring Venturian to the status quo. The Venturian defendants finally contend that those claims are barred by laches.

The Venturian defendants also move to dismiss Counts VIII and X, contending that Norwest Financial failed to allege that it has incurred or will incur any cognizable response or removal costs and that neither CERCLA nor MERLA provide a private cause of action for injunctive relief ordering the cleanup of contaminated property.[3]

The Venturian defendants further argue that Count IX of the complaint, seeking economic damages under MERLA, must be dismissed because Norwest Financial, as a non-owner, has no standing to assert a claim for damages that are not reasonably certain to occur. They further contend that any such claim will not be ripe until the cleanup of the property has been completed so that the value of the property may be ascertained. The Venturian defendants finally contend that MWI seeks the same damages in its cross-claim, and thus the claim presents the danger of double liability.

---

**1.** At the time of the original sale, Venturian was known as Napco International, Inc.

**2.** Norwest Financial brought rescission claims under the theories of breach of contract (Count IV), mutual mistake (Count V), and misrepresentation (Count VI).

**3.** In its brief, Norwest Financial claimed that it did not seek injunctive relief in Counts VIII and X, thus the court did not address the arguments related to the propriety of private claims for such relief under CERCLA or MERLA.

## DISCUSSION

On a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in the light most favorable to plaintiffs and the complaint's allegations must be accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 1734, 12 L.Ed.2d 1030 (1964). Thus, "the court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). With that standard at hand, the court will consider the Venturian defendants' motion to dismiss Counts IV through X.

### 1. *Norwest Financial's Rescission Claims*

■ In Counts IV, V and VI of its complaint, Norwest Financial seeks to enforce the representations and warranties made by Venturian to MWI in the purchase agreement and to rescind the sale of mortgaged property which occurred almost six years ago. Norwest Financial has no standing to assert such claims unless it is in privity with Venturian or an intended beneficiary of the purchase agreement. *See Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 486–87 (Minn.Ct.App.1987) ("since [plaintiffs] did not have privity of contract with [defendant], nor were they intended beneficiaries mentioned in the contract, they cannot recover under the contract and, thus, have no claim against [defendant]").[4] Examining the issue of whether privity exists, the court notes that Norwest Financial is not a party to the purchase agreement and its complaint does not allege Norwest Financial is an heir, personal representative, successor or assign of one of the parties to the agreement. Thus, there is no privity of contract between Norwest Financial, as assignee of the buyer's lender, and the Venturian defendants, as the prior seller of the property subject to the mortgage, and Norwest Financial has no standing to assert the rescission claims on that basis.

■ Norwest Financial contends, however, that it has standing to assert the rescission claims as an intended third-party beneficiary of the purchase agreement.[5] The Minnesota Supreme Court has adopted the following analysis to determine whether a party is an intended beneficiary of a contract: the recognition of such third-party beneficiary rights is "appropriate" under the circumstances and either of the following tests is met:

1. The intent to benefit test; or
2. The duty owed test.

*Cretex Cos. v. Construction Leaders*, 342 N.W.2d 135, 139 (Minn.1984) (adopting "the intended beneficiary approach outlined in Restatement (Second) of Contracts § 302 (1979)"); *Mears Park Holding Corp. v. Morse/Diesel, Inc.*, 427 N.W.2d 281, 284 (Minn.Ct.App.1988). The intent to benefit test generally requires that "the contract must express some intent by the parties to benefit the third party through contractual performance." *Chard Realty v. City of Shakopee*, 392 N.W.2d 716, 720–21 (Minn. Ct.App.1986) (citing *Cretex Cos.*, 342 N.W.2d at 138). Thus, if "[t]here is no reference to [plaintiff] in the contract … he is not an intended beneficiary." *Id.*

■ The Venturian defendants argue that Norwest Financial fails to meet the intent to benefit test. Applying that test to Norwest Financial's situation, the purchase agreement between Venturian and MWI expressly provides that "[s]eller

---

**4.** *Cf.* H. Hunter, *Modern Law of Contracts: Breach and Remedies* ¶ 4.03[2] (1986) ("[t]he rule of privity holds that breach of warranty is a breach of a private, voluntary undertaking rather than a breach of a public duty. It creates a right of action only between the parties to the agreement.").

**5.** Under Minnesota law there are two types of third-party beneficiaries: (1) intended beneficiaries and (2) incidental beneficiaries. *Cretex Cos.*, 342 N.W.2d at 139. An incidental beneficiary, however, has no right to enforce a contract. *Id.* Norwest alleges that it is an intended beneficiary of the purchase agreement.

makes the following representations and warranties to [b]uyer." Norwest Financial nonetheless seeks to enforce warranties that Venturian specifically extended to MWI as buyer. Unless the contract expresses some intent by the parties to benefit Norwest Financial, it is no more than an incidental beneficiary and thus cannot enforce the warranties or other terms of the purchase agreement. *Wurm*, 405 N.W.2d at 486. Examining the wording of the purchase agreement, the court concludes that it expresses no intent to benefit MWI's mortgagee: it does not mention MWI's lender, or any duties owed its lender, or otherwise state that the parties intended that the representations and warranties of the purchase agreement would run to the benefit of its lender. Thus, as mortgagee Norwest Financial is merely a lienholder as regards the property. Any benefit to Norwest Financial as mortgagee occurs as a result of the dealings between the borrower-seller and lender and is merely incidental to the purchase agreement, not because Norwest Financial is an intended beneficiary of that agreement. *Illinois Hous. Dev. Auth. v. Sjostrom & Sons, Inc.*, 105 Ill.App.3d 247, 61 Ill.Dec. 22, 30–31, 433 N.E.2d 1350, 1358–59 (1982); *see Mears Park*, 427 N.W.2d at 285 (completion of architect's duties under separate contract

"will not satisfy [developer's] duty to pay on the mortgage. Consequently, the conditions of the duty-owed test have not been met.") Based on the foregoing, the court concludes that Norwest Leasing cannot satisfy the intent to benefit test.[6]

⬛ MWI nonetheless contends that it did intend to benefit its mortgagee in the purchase agreement, and thus Norwest Financial has standing to assert MWI's right to rescind the agreement. The court, however, rejects that contention. Any such intent by MWI to benefit its mortgagee must be reflected in the written purchase agreement, and as previously discussed, the court finds no such intent. The court further notes that under Minnesota law, a party to a contract cannot assign its right to rescind a contract without also assigning the other rights and obligations of the contract. *See Cornell v. Upper Michigan Land Co.*, 131 Minn. 337, 155 N.W. 99, 102 (1915) ("an assignment by a [buyer] of a contract for the purchase of real estate and of all his rights thereunder includes the rights of the [buyer] to all remedies, legal or equitable, that he may have against the [seller, including] ... the right to have the contract rescinded....").[7] In the present case, Norwest Financial has not assumed

---

**6.** Norwest Financial cites *Duluth Lumber & Plywood Co. v. Delta Dev.*, 281 N.W.2d 377 (Minn. 1979) for the proposition that a third-party beneficiary need not be specifically identified in a contract to satisfy the intent to benefit test. In *Duluth Lumber*, the plaintiff, a materialman, sought to recover construction expenses as an intended beneficiary of a contractual provision that specifically required documentation that materialmen had been paid as a condition of final payment of the general contractor. *Id.* at 384. The Minnesota Supreme Court found that the provision was specifically intended to benefit materialmen because they had no mechanics' lien rights against a public owner and such injustice "supports recovery under the particular facts of [that] case." *Id.* at 385. In the present case, however, the purchase agreement never refers to the mortgagee or its interests. Moreover, the warranty which Norwest Financial seeks to enforce runs specifically in favor of the purchaser, MWI. Thus, the court determines that the purchase agreement reflects no intent to benefit the mortgagee.

Other courts have held that the intent to benefit "must be found in the contract as read in

light of all the surrounding circumstances." *See, e.g., Buchman Plumbing Co. v. Regents of the Univ. of Minn.*, 298 Minn. 328, 215 N.W.2d 479, 483–84 (1974). To determine whether such an intent is present, a court may examine to whom performance is due, thus:

> If, by the terms of the contract, performance is directly rendered to a third party, he is intended by the promisee to be benefitted. Otherwise, if the performance is directly rendered to the promisee, the third party who also may be benefitted is an incidental beneficiary with no right of action.

*Id.*, 215 N.W.2d at 484 (citation omitted). In the present case, the court concludes that even if it looks to whom performance is due to determine whether the parties intended to benefit the mortgagee, such intent is not present because the warranties made by Venturian specifically run to the benefit of MWI, not its mortgagee.

**7.** That rule is based on the notion that the assignee of a naked right to rescind assumes none of the burdens of the contract and thus does not have standing to bring suit to nullify the entire contract.

any other rights or obligations of MWI and thus may not assert MWI's right, if any, to rescind the purchase agreement. *Cf.* 17A C.J.S. *Contracts* § 413, at 505 (1963) ("[a] contract which is fully executed cannot be rescinded"). Accordingly, the court rejects MWI's contention that its alleged intent to benefit its mortgagee, which is not reflected in the purchase agreement, thereby allows Norwest Financial to assert any rights to rescind the purchase agreement on MWI's behalf.

■ The Venturian defendants also contend that Norwest Financial fails to satisfy the duty owed test. That test is met if the promisor's performance under the contract discharges some duty, most often an obligation to pay money, that is otherwise owed by the promisee to the beneficiary. *Mears Park Holding Corp.*, 427 N.W.2d at 285; *Cretex Cos.*, 342 N.W.2d at 138 (duty owed test applies in situations where promisee has legal responsibility to pay beneficiary); *Restatement (Second) of Contracts* § 302 (requiring satisfaction "of an obligation of the Promisee to pay money to the beneficiary"), or to otherwise discharge some duty owed by the promisee to the beneficiary. *Twin City Constr. Co. v. ITT Indus. Credit Co.*, 358 N.W.2d 716, 718 (Minn.Ct.App.1984) ("duty-owed test is met if the promisor's performance under the contract discharges a duty otherwise owed the third party by the promisee"). Norwest Leasing argues that it is the beneficiary of the following promise in the purchase agreement: that "to the best of [s]eller's [Venturians's] knowledge, [s]eller and [s]eller's tenants have complied with all applicable laws, codes, ordinances and regulations." Venturian's performance of that promise, however, will not discharge any duty owed by MWI to Norwest Financial because any such obligation arises not from the purchase agreement, but from a separate contract, the mortgage and its related documents. *See Cretex Cos.*, 342

N.W.2d at 138 (duty owed test is not met where legal responsibilities arise from a separate contract). Thus, Norwest Financial fails to meet the duty owed test.

Based on the foregoing, the court concludes that Norwest Financial is unable to satisfy either the intent to benefit or the duty owed test, and thus is not a third-party beneficiary of the purchase agreement between Venturian and MWI. Therefore, Norwest Financial has no standing to assert its rescission claims on that basis.

■ Even if Norwest Financial were an intended beneficiary of the purchase agreement, the court determines that it would have no standing to rescind a fully-performed contract to which it is not a party. The general rule is that "[a] third party beneficiary may not rescind a contract." 17A C.J.S. *Contracts* § 414, at 505–06 (1963).[8] Rather, "the contractual right that a third-party beneficiary acquires is to enforce a promise made for his benefit which he otherwise would not be able to enforce." *Twin City Constr. Co. v. ITT Indus. Credit Co.*, 358 N.W.2d 716, 718 (Minn.Ct.App.1984). In the present case, Norwest Financial does not seek to enforce any rights under a contract but rather to nullify the entire contract. The court thus concludes that even if Norwest Leasing were an intended beneficiary of the purchase agreement, it would have no standing to rescind the entire agreement.

Based on the foregoing, the court concludes that Norwest Leasing has no standing to assert claims to rescind the purchase agreement between Venturian and MWI, and therefore grants the Venturian defendants' motion to dismiss Counts IV, V and VI for failure to state a claim upon which relief may be granted.[9]

2. *Norwest Financial's Claims for Declaratory Judgment under CERCLA and MERLA*

■ In Counts VIII and X, Norwest Financial seeks declarations, under CERCLA

---

**8.** Norwest Financial also cites no authority for the proposition that a third-party beneficiary can rescind a contract.

**9.** Based on this conclusion, the court does not address the Venturian defendants' other

grounds to dismiss the rescission claims: that Norwest Financial is unable to restore the status quo, that Norwest Financial has an adequate remedy at law, and that the claims are barred by laches.

and MERLA respectively, that the defendants are liable for all past and future response costs needed to clean up the contamination of the property. The Venturian defendants do not dispute the existence of the contamination or that Venturian may be liable for clean up costs. The Venturian defendants argue, however, that Norwest Financial's claims for declaratory relief are flawed because they failed to allege either that Norwest Financial has incurred response costs cognizable under either CERCLA or MERLA or that it has potential responsibility for such costs, and thus it has no standing to seek declaratory judgment.

In its complaint, however, Norwest Financial alleges that it conducted an environmental assessment of the property.[10] It argues that the resulting expenses and attorneys' fees are cognizable response costs under CERCLA and MERLA and that it has standing to seek a declaration that defendants are liable for those costs as well as any future response costs. Norwest Financial thus contends that its complaint establishes a prima facie claim for recovery of response costs under both CERCLA and MERLA and thus is sufficient to justify a declaratory judgment.

Norwest Leasing further argues that even if it had not already incurred response costs that it would have standing to seek a declaration adjudicating the parties' rights and responsibilities with respect to the contamination of the property. It argues that declaratory relief is appropriate at this time because it is undisputed that there is pollution on the property which one or more of the parties will be required to remove or otherwise remediate and that the court may properly determine who is responsible for those costs before they are

incurred. *See Gopher Oil Co. v. Union Oil Co.,* 757 F.Supp. 988, 994 (D.Minn.1990) (*Gopher Oil I*) (allocating responsibility for future costs of investigating and cleaning up a site under CERCLA and MERLA), *aff'd and remanded in part on other grounds,* 955 F.2d 519 (8th Cir.1992); *cf. Caldwell v. Gurley Refining Co.,* 755 F.2d 645, 650 (8th Cir.1985) (party could properly seek declaration concerning potential liability for clean up costs and penalties arising from an oil spill that had been cleaned up by government). Norwest Financial thus seeks a declaration of its potential liability for pollution at the site before it attempts to foreclose or incur other liability for clean up costs.

In reviewing the record, the court concludes that there are factual questions about whether Norwest Financial has properly incurred cognizable response costs[11] under CERCLA and MERLA and whether it may be found liable for future clean up costs. The court further determines that those issues should not be resolved in the context of a Rule 12(b)(6) motion. *See Palmer v. Tracor, Inc.,* 856 F.2d 1131, 1132–33 (8th Cir.1988). Accordingly, the court denies the Venturian defendants' motion to dismiss Counts VIII and X.

3. *Norwest Financial's Claims for Economic Damages Under CERCLA and MERLA*

The Venturian defendants move to dismiss Count VII, which seeks economic damages under CERCLA. At the hearing, Norwest Financial agreed that Count VII should be dismissed. Accordingly, the court grants the Venturian defendants' motion to dismiss Count VII.

---

**10.** Norwest Financial specifically alleged that "[i]n connection with a proposed refinancing of the Property in late 1989 or early 1990, [Norwest Financial] caused an environmental investigation to be done on the property." Complaint at ¶ 53. Norwest Financial further alleged that there was "an Investigation Report, dated January 22, 1990, prepared for [Norwest Financial] regarding environment contamination at the Property." *Id.* at ¶ 55. It also claimed that "[t]he release or a threatened release of a hazardous substance from the Property has caused

and will continue to cause response costs to be incurred, including costs for removal and remedial action...." *Id.* at ¶ 95.

**11.** In private party CERCLA cases, the Eighth Circuit gives the term "response costs" a broad reading to include both investigative costs and attorneys' fees. *See General Elec. Co. v. Litton Indus. Automation Sys.,* 920 F.2d 1415, 1420–22 (8th Cir.1990).

■ In Count IX, Norwest Leasing also asserts a claim for economic damages under MERLA, Minn.Stat. § 115B.05, claiming that the contamination has decreased the property's value and thus it has suffered damages in the form of diminution in value of its collateral. MERLA requires actual economic damages and the Venturian defendants argue that Norwest Financial has no standing because it has not yet foreclosed its mortgage and will not suffer actual economic loss until it actually suffers a deficiency in collecting its note. Even if Norwest Financial has standing, the Venturian defendants contend that its claim is not ripe because calculation of Norwest Leasing's damages depends too heavily on future events.[12] They further claim that a rule which the EPA is currently proposing may eliminate Norwest Financial's liability under CERCLA. *See* Lender Liability Under CERCLA, 56 Fed.Reg. 28798 (1991) (to be codified at 40 C.F.R. pt. 300, subpt. L).

Norwest Financial argues, however, that it may properly recover damages for the possible diminution in the value of its collateral because MERLA provides that actual economic loss includes "any loss of past or future income or profits resulting from injury to, destruction of, or loss of real or personal property without regard to ownership of the property." Minn.Stat. § 115B.05, subd. 1(a)(3). It further contends that it has already suffered actual economic loss, the cost of its environmental investigation and its attorneys' fees related to that investigation and the commencement of this proceeding, and that it reasonably expects to incur future expenses resulting from the contamination. Norwest Financial thus argues it has standing to assert a claim for economic damages under MERLA. Norwest Financial further contends that the court may properly allocate responsibility and award damages for past and future clean up costs before any clean up begins. *See Gopher Oil I*, 757 F.Supp. at 997; *Gopher Oil III*, 955 F.2d at 528.

■ In assessing the sufficiency of Count IX, the court concludes that MERLA specifically permits recovery for the loss of future income or profits resulting from contamination. Minn.Stat. § 115B.05, subd. 1(a)(3). It is undisputed that contamination has occurred, and the court notes that Norwest Financial may have already incurred cognizable economic damages and may also be responsible for future clean up costs. The court further notes that the remedy that Norwest Financial seeks is no different than that relief this court granted in *Gopher Oil*, 757 F.Supp. at 996. Based on the foregoing, the court concludes that Count IX of the complaint seeks economic damages that may be recoverable pursuant to MERLA and that Norwest Financial

**12.** The Venturian defendants cite *Gopher Oil I* to support that proposition, arguing that this court held that a plaintiff is not entitled to recover for diminution in the value of property until the cleanup of a site was substantially complete because only then would the court have the evidence necessary to permit an accurate calculation of the "clean" value of the property. In *Gopher Oil I*, the jury found liability for common law fraud and also allocated responsibility for future response costs under CERCLA and MERLA. 757 F.Supp. at 990–95. The court retained jurisdiction until the site was substantially cleaned up because it determined that there was a danger of double recovery under the fraud claim if the plaintiff retained ownership of the property and was also awarded fraud damages based on the property's valuation, in its contaminated state, at zero. *Id.* at 995–97 (noting that although a property might currently be worthless because of contamination, it would not be worthless when it was cleaned up). The court notes, however, that the present case is distinguishable because it involves no fraud claims and thus does not present a danger of double recovery based on a property valuation set artificially low. The court further notes that *Gopher Oil I* undercuts the Venturian defendants' position because that case proceeded to trial and a determination of liability under CERCLA and MERLA was made even though the site was only partially cleaned up at the time of trial.

Moreover, this court certified the fraud damages issue to the Eighth Circuit, *Gopher Oil Co. v. Union Oil Co.*, 757 F.Supp. 998, 1019 (D.Minn. 1991) (*Gopher Oil II*), and the Eighth Circuit determined that the fraud damages should be calculated before the clean up was completed, using expert testimony, if necessary, to predict what the value of the site will be after restoration. *Gopher Oil*, 955 F.2d 519 at 528 (8th Cir.1991) (*Gopher Oil III*). The court thus finds that the Venturian defendants' reliance on *Gopher Oil I* is misplaced in light of the Eighth Circuit's remand on that issue.

may have standing to pursue its claim. Accordingly, the Venturian defendants' motion to dismiss Count IX of the complaint is denied.

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The Venturian defendants' motion to dismiss Counts IV, V and VI (the rescission claims) is granted;

2. The Venturian defendants' motion to dismiss Count VII (claim for economic damages under CERCLA) is granted; and

3. The Venturian defendants' motion to dismiss Counts VIII (declaratory judgment under CERCLA), IX (economic damages under MERLA) and X (declaratory judgment under MERLA) is denied.