*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0228**

Robert R. Schroeder Construction, Inc.,
Respondent,

vs.

Minnesota Department of Transportation,
Respondent,

vs.

W. Gohman Construction Co. d/b/a Artistic Stone and Concrete,
Appellant.

**Filed November 20, 2023
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Chippewa County District Court
File No. 12-CV-21-314

Nathan R. Sellers, Fabyanski, Westra, Hart & Thomson, PA, Minneapolis, Minnesota (for respondent Schroeder Construction)

Keith Ellison, Attorney General, Erik M. Johnson, Assistant Attorney General, St. Paul, Minnesota (for respondent department)

Gordon H. Hansmeier, Matthew W. Moehrle, Rajkowski Hansmeier Ltd., St. Cloud, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Wheelock, Judge; and Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**LARKIN**, Judge

This appeal stems from the summary disposition of a general contractor's indemnification claim against appellant subcontractor, which had been assigned to the department of transportation, and subcontractor's counter claim against the general contractor. Subcontractor challenges the district court's approval of a settlement agreement assigning the general contractor's indemnification claim to the department of transportation, the district court's grant of summary judgment to respondent department of transportation on the assigned claim, and the district court's denial of subcontractor's request for summary judgment on its counterclaim against the general contractor. We affirm in part, reverse in part, and remand.

**FACTS**

This appeal stems from a dispute regarding indemnity claims for monetary deductions and liquidated damages resulting from failure to meet contractual construction deadlines. The relevant undisputed facts are as follows.

Respondent Minnesota Department of Transportation (MnDOT) entered into a contract (the general contract) with respondent Robert R. Schroeder Construction Inc. (contractor) for a project to restore a historic bridge on a state highway, for a fixed price of $7,767,894.06.[1] The general contract incorporated Standard Specifications for Construction, 2018 Edition (MnDOT specifications). The general contract authorized

---

[1] Contractor did not submit briefing in this appeal.

monetary deductions of $2,500 for each day it took contractor to achieve interim completion after the project's interim-completion date. The interim-completion date was the date that the road would open to traffic. The general contract also authorized liquidated damages of $3,000 for each day it took contractor to achieve actual completion after the project's final-completion date, as well as the deduction of those damages from payments due to contractor. The final-completion date was the date that all the work on the project would be completed.

Contractor and appellant W. Gohman Construction Co. (subcontractor) entered into a subcontract (the subcontract) for subcontractor to complete historic stone riprap[2] work on lands adjacent to both ends of the bridge for a price of $2,965,370. The subcontract provided that subcontractor was bound by the terms of the general contract and was required to comply with all provisions of the general contract and to assume toward contractor all obligations and responsibilities of contractor under the general contract. The subcontract contained an indemnification provision that required subcontractor to indemnify contractor for any and all losses or damage caused by subcontractor's failure to carry out the provisions of the subcontract.

The parties operated under several construction schedules, all with different timelines. The original final-completion date under the general contract was November 16, 2019. That date was pushed into 2020 as the result of high-water levels that made work

---

[2] According to subcontractor, "[r]iprap is rock put in place to protect shoreline structures from erosion."

3

on some parts of the bridge futile. MnDOT agreed to provide an extension of the final-completion date based on that delay.

Contractor sent subcontractor a schedule directing subcontractor to begin its work replacing the riprap by May 27, 2020, to do so concurrently on both sides of the bridge, and to complete its work within 90 days. Contractor later adjusted subcontractor's start date to May 20, 2020, with a completion date of August 18, 2020.

Subcontractor did not start work in May 2020 as directed. Instead, subcontractor began replacing the riprap on July 13, 2020. On July 30, August 6, and August 27 of 2020, contractor communicated to subcontractor its dissatisfaction with subcontractor's untimely work and insufficient manpower at the job site. In the last communication, contractor stated that it would "consider passing on LQD's"[3] if subcontractor did not comply with contractor's request for increased "manpower and equipment to work both sides of the river." Subcontractor responded that it could complete the riprap work on the west and east sides of the bridge in October 2020.

In October 2020, contractor began withholding payments from subcontractor based on subcontractor's failure to comply with requests to increase efforts to finish its work on the project. Subcontractor did not finish installing the riprap in 2020.

In 2021, the project delays soured the relationship between MnDOT and contractor. Negotiations regarding a time extension of the final-completion date ceased, and MnDOT

---

[3] We understand "LQD's" to be a reference to liquidated damages, which is consistent with the parties' arguments on appeal.

eventually withheld payments to contractor based on the delay. Contractor, in turn, withheld $665,262 from its payments to subcontractor.

In June of 2021, subcontractor was still attempting to finish the riprap installation. Several relevant events occurred around this time. First, subcontractor notified contractor that it had performed five additional weeks of work that were not contemplated in the general contract and subcontract as a result of specifications required by MnDOT and MnDOT's historical consultant, Gemini Research. Second, contractor sued MnDOT for breach of contract, challenging MnDOT's withholding of payments based on delay. Contractor alleged that MnDOT refused to grant contractor "reasonable time extensions for delays . . . which were beyond [contractor's] reasonable control." Third, MnDOT counterclaimed against contractor for liquidated damages and monetary deductions under the general contract. And fourth, contractor brought a third-party indemnity claim against subcontractor, seeking indemnification for the delay damages sought by MnDOT.

In August 2021, contractor achieved final completion of the bridge project. Also in August, subcontractor asserted a counterclaim against contractor for payment of the remaining subcontract balance (i.e., the $665,262 that contractor had withheld from its payments to subcontractor).

The parties attempted to settle their claims through mediation. After those efforts failed, subcontractor and MnDOT moved for summary judgment. In July 2022, before resolution of the summary-judgement motions, MnDOT and contractor agreed to settle contractor's claims against MnDOT for an amount less than the total payments that MnDOT had withheld from contractor. MnDOT and contractor arrived at that amount by

5

agreeing that 272 days of delay were excusable and by extending the original final-completion date from November 15, 2019, to August 12, 2020. MnDOT and contractor agreed that "any remaining delay is not excusable because it was a delay 'due to . . . subcontractor's . . . mismanagement'" and that "as a result of [subcontractor's] failure to carry out the provisions of the [s]ubcontract, [subcontractor] is responsible to [contractor] for [MnDOT's] claims against [contractor]." As part of the settlement agreement, contractor assigned to MnDOT "all claims and defenses it has in the Lawsuit against [subcontractor]."

According to the settlement agreement, MnDOT had withheld $2,377,000.66 from contractor as monetary deductions and liquidated damages. MnDOT and contractor agreed to compromise on contractor's claims against MnDOT for $1,961,738.66 and that MnDOT would release that amount to contractor. MnDOT and contractor also agreed to compromise on MnDOT's claims against contractor for $1,445,500, which would be payable only out of the proceeds of the indemnity claims that contractor assigned to MnDOT.

Neither subcontractor nor the district court was aware of MnDOT and contractor's efforts to settle the dispute without subcontractor. The settlement agreement was first disclosed in MnDOT's summary-judgment submissions in district court. At the summary-judgment hearing, subcontractor objected to the settlement agreement and urged the district court to reject it. The district court approved the agreement, reasoning that it was "proper for [MnDOT] to assume [contractor's] third-party liability claim." The district

6

court further reasoned that a settlement, such as the one at issue here, served judicial economy by turning a three-sided dispute into a two-sided dispute.

The district court granted MnDOT's motion for summary judgment, concluding that there was no genuine issue of material fact regarding whether MnDOT, standing in the shoes of the contractor, was entitled to indemnification under the subcontract, including a recovery for contractor's attorney fees and costs. The district court entered judgment for MnDOT in the amount of $948,274.28.[4] The district court denied subcontractor's request for summary judgment on its counterclaim against contractor and dismissed that claim.

Subcontractor appeals.

## DECISION

This case comes to us for review of the district court's summary-judgment rulings. The district court must grant summary judgment if the moving party shows "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. The party moving for summary judgment must support his assertion that there is no genuine issue as to any material fact by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine issue for trial." Minn. R. Civ. P. 56.03(a).

We review a district court's grant of summary judgment de novo. *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). In doing so, we "view the

---

[4] The district court calculated damages as follows: total liquidated damages of $1,455,500, less an offset of $665,262 for the amount contractor had withheld from subcontractor, plus attorney fees and costs of $168,036.28. That calculation yields damages of $958,274.28. Thus, there appears to be a $10,000 typographical error in the judgment.

evidence in the light most favorable to the party against whom summary judgment was granted to determine whether there are any genuine issues of material fact and whether the district court correctly applied the law." *Id.* Summary judgment is inappropriate if reasonable people can draw different conclusions from the evidence presented. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997). But the nonmoving party "must do more than rest on averments or denials of the adverse party's pleading." *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 754 (Minn. 2005). The nonmoving party must identify specific facts that establish the existence of a triable issue of fact. *Papenhausen v. Schoen*, 268 N.W.2d 565, 571 (Minn. 1978).

## I.

Subcontractor contends that MnDOT is not entitled to summary judgment on its indemnification claim, arguing that there are genuine issues of material fact regarding whether subcontractor's delays were excusable.

The district court's grant of summary judgment was implicitly based on provision 6.3 in the subcontract (the indemnity provision) in which subcontractor agreed to:

> Defend, indemnify and save harmless Contractor from any and all losses or damage occasioned by Subcontractor's failure to carry out the provision of this Subcontract, *unless such failure results from causes not the responsibility of Subcontractor*. Loss or damage shall include, without limitation, legal fees and disbursements paid or incurred by Contractor as part of the loss or damage or to enforce the provisions of this paragraph, unless that failure results from causes that are not Subcontractor's responsibility.

(Emphasis added.) Under that provision, indemnity liability exists if: (1) contractor incurred losses or damage, (2) that were caused by subcontractor's failure to carry out a

8

provision of the subcontract, and (3) unless such failure resulted from causes not the subcontractor's responsibility. MnDOT argues that subcontractor has not shown a genuine issue of material fact regarding any of those circumstances.

We agree that there is no genuine issue of material fact regarding the first circumstance: the contractor was assessed liquidated damages under the general contract as a result of its failure to complete the project within the timelines set forth in the general contract. But for the reasons that follow, we conclude that there are genuine issues of material fact regarding the second and third aspects of the underlying indemnification claim.

*The Cause of Contractor's Damages*

In district court, MnDOT asserted that contractor's monetary deductions and liquidated damages were caused by subcontractor's failure to carry out subcontract provisions regarding notice of delay and incorporated schedules. The district court adopted that reasoning, concluding that subcontractor "was bound to the project schedule" and "also . . . failed to give notice of why there should be excuse for the delays."

On appeal, MnDOT emphasizes subcontractor's failure to comply with a notice provision in the subcontract (the notice-of-delay provision), under which subcontractor agreed to:

> Give written notice to Contractor of all claims for extras, for extensions of time and for damages for delay or otherwise in accordance with the General Contract, allowing Contractor to give timely notice to [MnDOT]. Timely notice shall mean three (3) working days before the expiration of the relevant notice period in the General Contract.

It is undisputed that subcontractor failed to complete its work within the timelines set forth in the general contract. It is also undisputed that subcontractor provided only one notice of delay to contractor: subcontractor notified contractor that it had performed five additional weeks of work that were not contemplated in the general contract and subcontract, as a result of specifications required by MnDOT and MnDOT's historical consultant. Finally, it is undisputed that subcontractor did not provide contractor with notice of delay based on the circumstances that subcontractor now points to as an excuse for its delay.

MnDOT asserts that subcontractor's failure to give contractor notice of delay "deprived [contractor] of the opportunity to avoid delay damages." Specifically, MnDOT argues that, because subcontractor did not notify contractor of the circumstances that subcontractor now points to as an excuse for its delay, contractor did not provide notice to MnDOT or seek a time extension from MnDOT based on those circumstances. MnDOT further argues that, because contractor did not do so, contractor waived any claim that delay attributable to subcontractor was excusable and therefore lost the opportunity to possibly avoid monetary deductions and liquidated damages for those delays. *See, e.g.*, MnDOT specification 1402.1 (explaining that contractor's failure to provide requisite notice "constitute[d] a waiver of the [c]ontractor's entitlement to compensation or a time extension"); 1403.1 (explaining that MnDOT will "consider requests for [c]ontract revisions only if the notification procedures . . . are followed"); 1403.2-.6 (setting forth the notification procedures regarding contract revisions); 1517.1 (requiring contractor to give notice in writing if it intends to file a claim for a time extension).

MnDOT argues that there is no genuine issue of material fact that subcontractor's failure to carry out the notice-of-delay provision caused contractor to incur monetary deductions and liquidated damages. For the reasons that follow, we disagree.

MnDOT's causation theory presumes that if subcontractor had provided notice of delay, then contractor would have provided notice to MnDOT and requested a time extension from MnDOT and that MnDOT would have granted the request. But under MnDOT specification 1806.1, MnDOT "will only extend the Contract Time if an *excusable* delay [as defined in MnDOT specifications] delays Work on the Critical Path." (Emphasis added.) MnDOT specification 1806.2C defines non-excusable delays as "delays that are the [c]ontractor's fault or responsibility."

In district court, MnDOT argued that "a delay caused by [subcontractor's persistent] understaffing is 'the Contractor's fault or responsibility' and is not excusable and so would not provide justification for a time extension." In addition, in its settlement with contractor, MnDOT agreed that "any remaining delay [by subcontractor] is not excusable because it was a delay 'due to . . . the subcontractor's . . . mismanagement.'" *See* MnDOT specification 1806.2C(1) (stating that a "non-excusable delay" includes a delay due to subcontractor's "mismanagement").

In fact, MnDOT has consistently taken the position that subcontractor's delays were inexcusable and likely the result of subcontractor's mismanagement of staffing resources. MnDOT argued in district court and to this court that subcontractor has failed to raise a genuine issue of material fact regarding whether its failure to comply with the general contract's schedule provisions resulted "from causes not the responsibility of

11

[s]ubcontractor." MnDOT insists that there is no record evidence showing that subcontractor's delays were excusable.

But if subcontractor's delays were *inexcusable*—as MnDOT has consistently argued—then the general contract and the incorporated MnDOT specifications prohibited a time extension based on those delays. *See* MnDOT specification 1806.1 (providing that MnDOT will only extend the contract time for "an excusable delay" as defined in MnDOT specification 1806.2B or 1808.2A). And without a time extension, contractor was subject to monetary deductions and liquidated damages. And because contractor is not entitled to indemnification for damages caused by subcontractor's failure to carry out the subcontract if "such failure results from causes not the responsibility of [s]ubcontractor," if there is a genuine issue of material fact regarding whether any of subcontractor's delay was excusable, it cannot be said—as a matter of law—that subcontractor's *failure to provide notice of delay* caused contractor to incur damages, such that contractor was entitled to indemnification.

MnDOT argues that there is no genuine issue of material fact that subcontractor failed to comply with the schedule provisions of the general contract as incorporated in the subcontract or that such failure caused contractor to incur monetary deductions and liquidated damages. Subcontractor counters that, under the indemnity provision, subcontractor is not required to indemnify contractor if subcontractor's failure to comply with the incorporated-schedule provisions "result[ed] from causes not the responsibility of [s]ubcontractor."

12

Subcontractor has presented evidence that untimely site preparation by another subcontractor affected subcontractor's ability to complete the riprap as directed by contractor in the summer of 2020. That evidence raises a genuine issue of material fact regarding whether subcontractor's delay resulted from causes not the subcontractor's responsibility and, therefore, whether subcontractor is liable under the indemnity provision.

On this record, applying de novo review, we conclude that there are genuine issues of material fact regarding (1) whether subcontractor's failure to give notice of delay caused contractor to incur the monetary deductions and liquidated damages; and (2) whether subcontractor's failure to carry out the incorporated schedule provisions of the general contract "result[ed] from causes not the responsibility of [s]ubcontractor." We therefore reverse the grant of summary judgment for MnDOT, including the award of attorney fees, costs, and disbursements and remand for further proceedings on MnDOT's claim.[5]

## II.

Subcontractor contends that requiring subcontractor to indemnify contractor for all of contractor's monetary deductions and liquidated damages results in an unreasonable and impermissible penalty against subcontractor.

As to liquidated damages:

> The term liquidated damages signifies the damages the
> amount of which the parties to a contract stipulate and agree,

---

[5] Because we reverse summary judgement for MnDOT, we do not address subcontractor's argument that the district court's offset against the summary judgment, in the amount of payments withheld from subcontractor, is "akin to an award of damages to [subcontractor]" and constitutes a "full award of [subcontractor's] counterclaim against [contractor]."

13

when the contract is entered into, shall be paid in case of breach. It is well settled that the parties to a contract may stipulate in advance as to the amount to be paid in compensation for loss or injury which may result in the event of a breach of the agreement. A stipulation of this kind is enforceable, at least in those cases where the damages which result from a breach of the contract are not fixed by law or are in their nature uncertain *and where the amount stipulated does not manifestly exceed the injury which will be suffered.*

*Schutt Realty Co. v. Mullowney*, 10 N.W.2d 273, 276 (Minn. 1943) (emphasis added) (quotation omitted).

The principles governing the use of liquidated-damages provisions are explained in *Gorco Construction Co. v. Stein*, 99 N.W.2d 69 (Minn. 1959). Our research indicates that those principles remain valid today. We therefore quote them here:

The modern trend is to look with candor, if not with favor, upon a contract provision for liquidated damages when entered into deliberately between parties who have equality of opportunity for understanding and insisting upon their rights, since an amicable adjustment in advance of difficult issues saves the time of courts, juries, parties, and witnesses and reduces the delay, uncertainty, and expense of litigation. Accordingly this court has long regarded provisions for liquidated damages as prima facie valid on the assumption that the parties in naming a liquidated sum intended it to be a fair compensation for an injury caused by a breach of contract and not a penalty for nonperformance.

Although favorably disposed to giving effect to a provision for liquidated damages, this court has not hesitated, however, to scrutinize a particular provision to ascertain if it is one for a penalty or one for damages. In determining the issue neither the intention of the parties nor their expression of intention is the governing factor. The controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances.

14

The law adopts as its guiding principles that the injured party is entitled to receive a fair equivalent for the actual damages necessarily resulting from failure to perform the contract and no more.

Punishment of a promisor for breach, without regard to the extent of the harm that he has caused, is an unjust and unnecessary remedy and a provision having an impact that is punitive rather than compensatory will not be enforced.

. . . .

This court has held that where the actual damages resulting from a breach of the contract cannot be ascertained or measured by the ordinary rules, a provision for liquidated damages not manifestly disproportionate to the actual damages will be sustained. On the other hand, when the measure of damages resulting from a breach of contract is susceptible of definite measurement, we have uniformly held an amount greatly disproportionate to be a penalty.

*Gorco*, 99 N.W.2d at 74-75 (footnotes omitted) (quotation omitted).

Subcontractor argues that "an award of delay-related damages against [subcontractor]—especially in the amount called for in [the general contract] ($3,000 daily)—is punitive, not compensatory." Subcontractor further argues that the amount of liquidated damages assessed against contractor are "manifestly disproportionate" to any actual damages suffered by MnDOT as a result of subcontractor's failure to satisfy the incorporated-schedule provisions. Specifically, subcontractor argues that its work "had no direct impact on the public's ability to use the road and bridge."[6] In district court,

---

[6] In district court, subcontractor bluntly stated its position: "The public was not harmed or damaged by not seeing rough laid stones on the slopes of the roadway while they drove past going 60 miles per hour."

15

subcontractor argued that whether "the liquidated damages can be supported under the circumstances is a question of fact not susceptible to summary judgment."

MnDOT counters that it is not attempting to collect liquidated damages directly from subcontractor, that it is merely attempting to enforce contractor's indemnification rights, and that the liquidated-damages award is *reasonable as to contractor*. MnDOT argues that subcontractor's "arguments about the validity of liquidated damages are inapplicable because the only claim at issue against [subcontractor] was indemnity." MnDOT also argues that subcontractor has not raised a genuine issue of material fact regarding the validity of the liquidated-damages provision.

Neither party cites legal authority regarding whether it is appropriate to assess the reasonableness of the liquidated-damages award in this case in the context of the actual harm caused by subcontractor, as opposed to in the context of the anticipatory harm that was the basis for the liquidated-damages provision in the general contract. Although subcontractor argued to the district court that requiring subcontractor to indemnify contractor for all of the monetary deductions and liquidated damages would constitute an impermissible penalty, the district court did not explicitly address that argument or explain its implicit rejection. We therefore leave resolution of that issue to the district court in the first instance on remand.

### III.

Subcontractor contends that contractor's indemnity claim should be dismissed on summary judgment because contractor failed to give subcontractor notice of its claim for indemnification, as required under a notice provision in the subcontract. Subcontractor

16

argues that the relevant notice provision creates a "condition precedent for [contractor's] liquidated damages claim" against subcontractor.

"A condition precedent is a contract term that calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which the promisor's obligation is made to depend." *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 27 (Minn. 2018) (quotation omitted). "[P]arties to a contract may expressly agree that written notice of breach is a condition precedent to bringing a breach of contract claim and that the failure to give written notice bars a subsequent claim." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 365 (Minn. 2009).

"The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). "Where there is a written instrument, the intent of the parties is determined from the plain language of the instrument itself." *Id.* If a contract is clear and unambiguous, courts should apply the plain language of the contract and "not rewrite, modify, or limit its effect by a strained construction." *Id.* In addition, we construe a contract as a whole. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990).

Subcontractor relies on a notice provision in the subcontract (the notice-of-claim provision), by which the contractor agreed to:

> Give written notice to Subcontractor of all known claims that
> may affect Subcontractor within a reasonable period, but not

17

> more than thirty (30) calendar days, after knowledge of the claim.

That provision does not expressly state that notice of a claim is a condition precedent to a claim for indemnification. In fact, the notice provision does not even refer to the indemnification provision. Moreover, the indemnification provision does not state that contractor must provide notice to pursue an indemnification claim against subcontractor.

As support for its position, subcontractor relies on a single supreme court decision: *Buchman Plumbing Co. v. Regents of the Univ. of Minnesota*, 215 N.W.2d 479 (Minn. 1974). A contractual notice provision in *Buchman* stated:

> If Contractor (Buchman) claims any instructions, latent conditions or otherwise involves extra cost under this contract, he shall make claim for extra cost in writing within ten days after such instruction or observance of conditions. *Claims made after this time, or not made in writing, will be refused and no claim shall be valid unless so made.*

215 N.W.2d at 486 (emphasis added). The supreme court held that, under that language, written notice of claim was a condition precedent to a breach-of-contract action. *Id.*

The contract language in this case is materially different than the language in *Buchman*. In that case, the contract language expressly stated that a claim was invalid if the claimant failed to comply with certain procedural requirements (i.e., timing and writing requirements). The subcontract in this case does not contain similar language expressly stating that a claim by contractor against subcontractor is invalid if contractor fails to comply with the notice-of-claim provision.

18

Subcontractor notes that the supreme court quoted a second notice provision in *Buchman*, which does not include language expressly invalidating a claim based on failure to comply with procedural requirements. That provision stated:

> If *either party* to the contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage. Claims under this clause shall be made in writing to the party liable and within a reasonable time from the first observance of such damage and not later than the time of final payment, except as expressly stipulated otherwise.

*Id.* (emphasis added). Subcontractor argues that the *Buchman* court's condition-precedent determination was based on this second notice provision.

Because the issue in *Buchman* was whether Buchman could bring his claim despite failing to comply with the notice provision, and the first-quoted notice provision applied specifically to Buchman, we understand the supreme court's condition-precedent holding to be based on the first-quoted clause, which contained language expressly invalidating any noncompliant claim request by Buchman.

Moreover, subcontractor has not cited, and we are not aware of, any precedential case applying the reasoning of *Buchman* to contract language that does not expressly state that a claim is invalid if the claimant does not comply with procedural requirements related to the claim. Instead, our research revealed three nonprecedential decisions in which this court applied *Buchman* and held that claims were not actionable because the claimant failed

to comply with certain procedural requirements and contractual language expressly mandated compliance with those requirements to perfect a claim.[7]

In sum, the plain language of the subcontract does not support subcontractor's argument that notice by contractor was a condition precedent to contractor's claim for indemnification. *See Savela v. City of Duluth*, 806 N.W.2d 793, 797 (Minn. 2011) (rejecting a party's interpretation that would have required the supreme court to add words to a contract). We therefore affirm the district court's denial of summary judgment for subcontractor, without addressing the parties' disagreement regarding whether contractor complied with the notice provision by emailing subcontractor that it would "consider passing LQD's" on to subcontractor.

In addition to denying summary judgment for subcontractor, the district court dismissed subcontractor's counterclaim against contractor. In doing so, the district court reasoned that subcontractor's "breach of contract for untimely performance excuses

---

[7] *See, e.g.*, *Lunda Constr. Co. v. County of Anoka*, No. A18-0515, 2019 WL 178511, at *1-2 (Minn. App. Jan. 14, 2019) (explaining that MnDOT contract provision stated that failure to provide requisite notice "constitute[d] a waiver of . . . entitlement to compensation or a time extension" and that failure to submit claim within specified timeframe "waive[d] all claims for additional compensation in connection with the work already performed"), *rev. denied* (Minn. Mar. 27, 2019); *Contractors Edge, Inc. v. City of Mankato*, No. A14-0223, 2016 WL 102430, at *2 (Minn. App. Jan. 11, 2016) ("No Claim for an adjustment in Contract Price or Contract Times will be valid if not submitted in accordance with this Paragraph 10.05."); *Polk County v. Widseth.Smith.Nolting*, No. A04-681, 2004 WL 2940847, at *1 (Minn. App. Dec. 21, 2004) ("No Claim for an adjustment in Contract Price or Contract Times (or Milestones) will be valid if not submitted in accordance with [the notice provision]."); *see also Cameo Homes, Inc. v. Kraus-Anderson Constr. Co.*, No. Civ.022894, 2003 WL 22867640, at *4 (D. Minn. Dec. 3, 2003) (noting that the contract stated that any claims for payment of money "shall be referred initially to the Architect for action" and that Architect's decision "shall be required as a condition precedent to . . . litigation"), *aff'd*, 394 F.3d 1084 (8th Cir. 2005).

[contractor's] obligation to pay the contract price." Because subcontractor has raised a genuine issue of material fact regarding whether some of its delay was excusable and contractor is not entitled to indemnity for damages that "result[ed] from causes not the responsibility of [s]ubcontractor," it cannot be said—as a matter of law—that contractor was entitled to withhold the entire unpaid balance of the subcontract price. We therefore reverse the dismissal of subcontractor's counterclaim against contractor and remand for further proceedings on that claim.

## IV.

Finally, subcontractor contends that the district court abused its discretion by approving the settlement agreement between MnDOT and contractor. We review a district court's decision to approve a settlement agreement for an abuse of discretion. *Vill. Lofts at St. Anthony Falls Assn's v. Hous. Partners III-Lofts LLC*, 924 N.W.2d 619, 635 (Minn. App. 2019), *aff'd in part, rev'd in part*, 937 N.W.2d 430 (Minn. 2020) (reversing on other grounds without addressing the settlement agreement in its review); *see Breza v. Kiffmeyer*, 723 N.W.2d 633, 636 (Minn. 2006) (relying on a legal principle from a prior case that was reversed on other grounds).

Here, in approving the settlement agreement, the district court reasoned that "the current dispute between [MnDOT], [subcontractor], and [contractor] is indistinguishable from *Rice Lake*," a case in which this court approved a *Two Harbors* settlement agreement in a construction context.[8] *See Rice Lake Contracting Corp. v. Rust Env't & Infrastructure,*

---

[8] A *Two Harbors* settlement agreement is one in which a defendant agrees to pay the plaintiff out of a conditional promissory note and the defendant is authorized to pursue an

21

*Inc.*, 616 N.W.2d 288, 292-93 (Minn. App. 2000) (holding that a *Two Harbors* settlement agreement between a contractor and city was enforceable), *rev. denied* (Minn. Oct. 26, 2000). MnDOT argues that the district court was within its discretion to approve the settlement agreement because it "was consistent with the agreement approved in *Rice Lake*."

In *Rice Lake*, this court said that settlement agreements—in which a contractor is authorized to pursue a project owner's claims against a third-party—"serve judicial efficiency by turning three-sided disputes into two-sided conflicts." *Id.* at 292. We affirmed the district court's approval of such an agreement, reasoning:

> the issues [the non-settling party] faced at trial after the . . . settlement were precisely those it confronted before the settlement. There was some realignment of the parties, but, at bottom, [the settling defendant] was simply put in the role of a neutral. In most cases, turning a party into a neutral will simplify the trial.

*Id.*

We more recently affirmed the district court's rejection of a *Two Harbors* settlement agreement purportedly modeled after the so-called *Two Harbors* agreement in *Rice Lake*. *Vill. Lofts*, 924 N.W.2d at 637. In doing so, we concluded that certain aspects of *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982), are appropriately considered when determining whether to approve a *Two Harbors* settlement.[9] *Id.* at 636. We explained:

---

indemnity action against a third party who was not a party to the settlement agreement. *Rice Lake Contracting Corp.*, 616 N.W.2d at 292.

[9] "A *Miller-Shugart* settlement agreement is a settlement between a plaintiff and an insured defendant in which the defendant, having been denied coverage for the claim, agrees that the plaintiff may enter judgment against it for a sum collectible only from the insurance

Although a stipulated judgment naturally is binding as between the stipulating parties, it is binding on an indemnifying third party only if it is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. In addition, a . . . settlement agreement may be rejected if it is the product of fraud or collusion. A . . . settlement agreement is collusive if there was a lack of opposition between a plaintiff and an insured that otherwise would assure that the settlement is the result of hard bargaining.

*Id.* at 636-37 (quotations omitted).

Subcontractor complains that the district court did not consider whether the settlement is unreasonable and the product of collusion. As to collusion, subcontractor argues that the agreement was reached in secret without any notice to subcontractor or the district court and that contractor abandoned significant liability defenses by agreeing to the settlement.

As to unreasonableness, subcontractor argues that "the amounts negotiated for liquidated damages and monetary deductions in the settlement are excessive, and thus unreasonable, and are not what a prudent person in [contractor's] position would agree to." Subcontractor emphasizes that prior to agreeing to the settlement, contractor "vehemently disputed" MnDOT's imposition of monetary deductions and liquidated damages.

---

policy." *King's Cove Marina, LLC v. Lambert Commercial Constr. LLC*, 958 N.W.2d 310, 313 n.1 (Minn. 2021) (citing *Miller*, 316 N.W.2d at 729).

The district court's order does not address subcontractor's arguments that the settlement agreement was unreasonable and the product of collusion. We are not surprised because, although subcontractor objected to the settlement in district court, subcontractor did not cite legal authority for its assertions that the settlement was unreasonable and collusive. Generally, we do not consider issues that were not raised and determined in the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Because we are reversing and remanding on other grounds, and because a decision whether to accept a settlement agreement is discretionary, it should be made in the district court in the first instance based on all relevant considerations—including reasonableness and collusion. We therefore reverse and remand the district court's approval of the settlement agreement between MnDOT and contractor for reconsideration.

In conclusion, we affirm the denial of subcontractor's request for summary judgment on its counterclaim, but we reverse the dismissal of that counterclaim. We also reverse the grant of summary judgment for MnDOT and the district court's approval of the settlement agreement between MnDOT and contractor. We remand for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**